Filed 5/28/14

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>CHRISTIAN ARCE,<br><br>        Defendant and Appellant. | A138376<br><br>(San Francisco County<br>Super. Ct. No. 214366) |

Defendant Christian Arce pleaded guilty to assault with a firearm. He appeals from a postjudgment order requiring him to pay restitution to compensate the victim for economic losses.[1] He contends that the order must be reversed because (1) the People waived their ability to seek such restitution; (2) the portion of the order compensating the victim for future lost wages lacks a rational basis; and (3) his trial counsel was ineffective by not seeking a discount of that portion of the order to account for its present-day value. We reject these claims and affirm.

---

[*] This opinion is certified for publication with the exception of part II.A. and B. (California Rules of Court, rules 8.1105(b) and 8.1110.)

[1] Restitution that compensates victims directly for their economic losses is authorized under Penal Code section 1202.4, subdivision (f), and we refer to this form of restitution as "direct restitution." All further statutory references are to the Penal Code.

## FACTUAL AND PROCEDURAL
### BACKGROUND

In September 2009, Arce shot the victim in the hand after an argument outside a nightclub in San Francisco.[2] Arce fled, but he was soon apprehended. He was charged with felony counts of attempted murder and assault with a firearm and misdemeanor counts of unlawful possession of a loaded firearm and resisting, obstructing, or delaying a peace officer.[3] Several enhancements were also alleged. In connection with the attempted-murder charge, Arce was alleged to have personally and intentionally discharged a firearm. In connection with the assault charge, Arce was alleged to have personally inflicted great bodily injury and to have personally used a firearm.[4] Arce eventually pleaded guilty to assault with a firearm, and he admitted the allegation that he personally inflicted great bodily injury. The remaining charges and allegations were dismissed.

In February 2012, Arce was sentenced to five years in prison. At the sentencing hearing, the trial court imposed a restitution fine of $200 under section 1202.4, subdivision (b) and other fines and fees, but the People did not seek, and the court did not award, direct restitution.

Approximately nine months later, the People sought direct restitution, and the trial court set a hearing to consider the request. In their pre-hearing brief, the People requested restitution "in the amount established at the hearing" to compensate the victim for medical bills and for past and future lost wages because the hand injury caused the

---

[2] The facts in this paragraph are drawn in part from the probation report, which summarizes the police report to which Arce stipulated as the factual basis of his plea.

[3] The charges were brought under sections 187, subdivision (a) and 664 (attempted murder); section 245, subdivision (a)(2) (assault with a firearm); section 12031, subdivision (a)(1) (unlawful possession of a firearm); and section 148, subdivision (a)(1) (resisting, obstructing, or delaying a peace officer).

[4] The allegation of personal discharge of a firearm was brought under section 12022.53, subdivision (d), the allegation of personal infliction of great bodily injury under section 12022.7, subdivision (a), and the allegation of personal use of a firearm under section 12022.5, subdivision (a).

victim to lose his job.[5]  Arce's response brief claimed that "[n]o evidence exist[ed] to show that any injuries prevented [the victim] from working" or "that those injuries were caused by [Arce]."

The hearing was held in February 2013.  The victim testified he had worked as a window installer and warehouse manager for Home Depot and a predecessor company it had bought.  A Home Depot manager testified that the victim began working for Home Depot in 2006, stopped working as of the day he was shot, and remained on leave until August 2010, when the company ended the employment relationship.  The manager testified the victim's gross pay was $7,037 in 2006, $19,049 in 2007, $41,739 in 2008, and $35,651 in 2009.  According to the victim, his annual gross pay increased over that period due to his good performance.

The victim testified that his work at Home Depot was "very physical" and involved lifting windows in and out of trucks and carrying them to and from sites.  The injury to his hand left him unable to continue working because he could no longer pick up large windows.  Although he asked Home Depot for other work, there was none available that he was physically able to perform.  He received a doctor's note stating he was unable to work and, although at some point he was released for "light duty," he was never given a "return to work date."  At the time of the restitution hearing, he remained unable to make "a full fist" with the injured hand, and he was still in pain.  He had undergone seven surgeries on his hand and was facing yet another one, which he hoped would be successful and enable him to make a fist.

The victim testified that, although he had recently started to receive disability payments of $1,300 per month, he was not paid while on leave from Home Depot and had not earned any income since being shot.  He had not applied for other jobs because the positions he saw "that require[d] less physical [work required] education and training, . . . which [he] didn't have at the time."  He had recently begun attending

_____

[5] The trial court ultimately declined to award restitution for medical expenses, and we therefore do not discuss facts relating only to that issue.

3

community college to "acquire . . . different skills" that would allow him to "try[] to do something other than physical work."

The People sought direct restitution for nine years of lost wages: three and one-half years in past wages lost between the shooting and the hearing, and five and one-half years in future lost wages. The prosecutor argued there was "a rational basis" for awarding five and one-half years' worth of future lost wages because that period represented the time "before [the victim will be] able to complete his future training and get enough experience and a new job that he would be back at that earning level of $41,000 a year, or the equivalent at that point." Arce's counsel responded that "[t]here's no evidence that [the victim]'s been unable to work as a result of this injury" and that any award of lost wages at $41,000 a year was "mere speculation." The trial court continued the hearing to March 2013 for further evidence and argument.

At the next hearing, the prosecutor conceded that the evidence failed to support an award for medical expenses but reiterated the People's demand for lost wages. He argued the victim was "overly optimistic that he [would] find employment again," and that "even if he is eventually able to find a job, it will take a significant amount of training for him, and even after that, he may not find anyone to employ him. If he does, it may only be at a minimum wage job. [¶] It may be a long time before he's ever able to get up to the amount of almost $42,000 a year that he was making before this happened." Arce's counsel responded that the trial court should deny an award of lost wages because "there is no evidence before the court in the form of medical or scientific evidence to show that [the victim] was unable to work as a result of his medical condition. . . . [¶ . . . ¶] . . . [T]here's no vocational rehabilitation testimony. There's no economist testimony to show that any of the [$]41,000 that he made in 2008 couldn't have been made in some other capacity."

The trial court awarded $289,851 in total direct restitution, plus interest. In doing so, it observed, based on the nature of the injury and the victim's testimony, that there was "a fairly good indication that this is something that's going to continue." In accepting the prosecutor's projected time frame for the victim's economic harm, the court

4

stated, "I really can't dispute that[,] because [the victim]'s been on disability for three and a half years, and it doesn't seem that his hand has come along all that far as far as being rehabilitated. I tend to agree that he might be very optimistic in his recovery time." To arrive at the award, the court used as a base salary $41,739, the amount the victim earned in the last full year he worked. It apparently multiplied this base salary by 3.5 to determine past lost wages of $146,086.50 and by 5.5 to determine future lost wages of $229,564.50. It then apparently subtracted from the future portion of the award $85,800, representing the amount in disability payments the victim would receive over the five and one-half years at a rate of $1,300 a month. Thus, the final award was for $146,086.50 in past lost wages and $143,764.50 in future lost wages.

Arce timely appealed.

## II.
### DISCUSSION

*A.      The People Did Not Waive Their Ability to Seek Direct Restitution.*

Arce argues that the People waived their ability to seek direct restitution by not asking for it before the trial court originally pronounced the sentence. We disagree.

Restitution to a "victim of crime who incurs an economic loss as a result of the commission of a crime" is mandatory. (§ 1202.4, subd. (a)(1); *People v. Brown* (2007) 147 Cal.App.4th 1213, 1225; see also *People v. Runyan* (2012) 54 Cal.4th 849, 854-855, 864.) Thus, with certain exceptions inapplicable here, "in every case in which a victim has suffered economic loss as a result of the defendant's conduct, the [trial] court shall require that the defendant make restitution to the victim . . . in an amount established by court order, based on the amount of loss claimed by the victim . . . or any other showing to the court." (§ 1202.4, subd. (f).) A trial court has discretion to order less than "full restitution," however, should it "find[] compelling and extraordinary reasons for not doing so and state[] them on the record." (*Ibid.*)

Even if a trial court does not explicitly retain jurisdiction to impose or modify a restitution order, "a victim, the district attorney, or a [trial] court on its own motion [may] request[] correction, at any time, of a sentence when the sentence is invalid due to the

5

omission of a restitution order or fine without a finding of compelling and extraordinary reasons pursuant to [s]ection 1202.4." (§ 1202.46; *People v. Moreno* (2003) 108 Cal.App.4th 1, 10 (*Moreno*).) In *Moreno*, the trial court awarded direct restitution during the pendency of the defendant's direct appeal even though it had not awarded such restitution when the defendant was initially sentenced. (*Moreno*, at p. 4.) The defendant in *Moreno* challenged the award and argued, as Arce argues here, that the People waived the right to seek direct restitution by not requesting it before the sentence was originally pronounced. (*Ibid.*) The Court of Appeal disagreed and held that section 1202.46 preserved the trial court's ability to correct a sentence that did not provide for direct restitution "notwithstanding [the] trial court's failure to retain jurisdiction to impose or modify a restitution order." (*Id.* at p. 10.) The court concluded that a sentence omitting mandatory direct restitution is invalid, and "[i]t follows that [a trial] court is not barred from correcting the invalid sentence simply because the prosecutor failed to object when it was imposed." (*Ibid.*) We agree with *Moreno* and conclude that the People did not waive their ability to seek direct restitution here simply because they neglected to request it at the time Arce was originally sentenced.

Arce argues that *Moreno* wrongly applied *People v. Tillman* (2000) 22 Cal.4th 300.[6] We are not persuaded. In *Tillman*, our state Supreme Court held that the People had waived a claim that the trial court wrongly failed to impose a restitution fine under section 1202.4 and a parole-revocation fine under section 1202.45. (*Tillman*, at pp. 301-302.) In concluding that there was a waiver, *Tillman* relied on *People v. Scott* (1994) 9 Cal.4th 331, which held that the waiver doctrine applies " 'to claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices.' " (*Tillman,* at p. 302.) According to Arce, the People waived their ability to seek direct restitution under *Tillman* because "the trial court ha[d] the discretion to waive

---

[6] In his reply brief, Arce identifies for the first time a number of other reasons we should not follow *Moreno*, *supra*, 108 Cal.App.4th 1, but "[i]t is axiomatic that arguments made for the first time in a reply brief will not be entertained because of the unfairness to the other party." (*People v. Tully* (2012) 54 Cal.4th 952, 1075.)

[victim] restitution for extraordinary and compelling reasons." But we reject this contention as the Court of Appeal did in *Moreno*. (*Moreno*, *supra*, 108 Cal.App.4th at pp. 8-9.) A trial court has discretion to award less-than-full restitution if it finds and states compelling and extraordinary reasons for doing so, but it does *not* have discretion simply to refuse an award. (§ 1202.4, subd. (f); *Moreno*, at p. 9.) As a result, *Tillman* is inapplicable because the trial court did not have discretion to exclude direct restitution from Arce's initial sentence.

As did *Moreno*, we conclude that "the answer to the question before us lies not in *Tillman* but in the second sentence of section 1202.46," which preserves a trial court's ability to correct a sentence that excludes direct restitution. (*Moreno*, *supra*, 108 Cal.App.4th at pp. 9-10.) Arce's original sentence did not include a mandatory award of direct restitution and, under section 1202.46, the People were entitled to move to correct the sentence "at any time." (§ 1202.46.) Arce argues that section 1202.46 "was logically passed for the purpose of confirming the holding of [*People v. Rowland* (1997) 51 Cal.App.4th 1745]"—a case in which Division Two of this court held that direct restitution is mandatory (*id.* at pp. 1751-1752)—"so as to permit judgments lacking restitution orders to be amended based on the argument that the judgment is unauthorized as a result of such omission." He claims that *People v. Tillman*, *supra*, 22 Cal.4th 300 "superseded" *Rowland*, and he implies that *Tillman* somehow negates section 1202.46. But we do not perceive how *Tillman* would allow us to disregard the statute's clear language permitting the People to seek direct restitution when an original sentence fails to include it. We conclude the People did not waive their ability to seek direct restitution.

B. *The Trial Court Did Not Abuse Its Discretion in Awarding Restitution for the Victim's Future Lost Wages.*

Arce next contends that the trial court lacked a rational basis in calculating the portion of direct restitution that compensated the victim for future lost wages, requiring us to remand for a recalculation. Again, we disagree.

We begin by discussing our standard of review and the general legal principles governing direct restitution awards. An appellate court reviews a trial court's restitution

award for an abuse of discretion by asking " 'whether the ruling in question "falls outside the bounds of reason" under the applicable law and the relevant facts.' " (*People v. Giordano* (2007) 42 Cal.4th 644, 663.) "Under this standard, while a trial court has broad discretion to choose a method for calculating the amount of restitution, it must employ a method that is rationally designed to determine the . . . economic loss." (*Id.* at pp. 663-664.) " ' " 'When there is a factual and rational basis for the amount of restitution ordered by the trial court, no abuse of discretion will be found by the reviewing court.' " ' " (*People v. Baker* (2005) 126 Cal.App.4th 463, 467.) Because " ' "[a]ll intendments and presumptions are indulged to support [the judgment] on matters as to which the record is silent," ' " a defendant arguing that a trial court failed to account for various factors in its calculation must "affirmatively show[]" "that the *amount* of restitution ordered was an abuse of the trial court's discretion." (*Giordano*, at p. 666, italics added.)

Restitution may be awarded for "prospective economic losses," including future lost wages. (*People v. Giordano*, *supra*, 42 Cal.4th at p. 657; *People v. Millard* (2009) 175 Cal.App.4th 7, 29-30; see § 1202.4, subd. (f)(3)(D) [providing for recovery of "[w]ages or profits lost due to injury incurred by the victim"].) "The burden is on the party seeking restitution to provide an adequate factual basis for the claim" by a preponderance of the evidence. (*Giordano*, at p. 664; *Millard*, at p. 26.) The People may establish "a prima facie case for restitution" based on the "victim's testimony on, or other claim or statement of, the amount of his or her economic loss." (*Millard*, at p. 26; *People v. Keichler* (2005) 129 Cal.App.4th 1039, 1048.) Once a prima facie case is established, the " 'burden then shifts to the defendant to demonstrate that the amount of the loss is other than that claimed by the victim.' " (*Millard*, at p. 26.)

Arce contends the trial court lacked a rational basis for its calculation of the victim's future lost wages because it failed to consider that the victim might find work or recover during the next five and one-half years. This argument is unconvincing for at least two reasons. First, it misapprehends the relevant evidentiary burdens. The People made a prima facie showing of the victim's anticipated future lost wages based on the

8

evidence presented at the first restitution hearing, and Arce does not claim otherwise. Thus, the burden shifted to Arce to rebut this showing, but he presented no evidence that did so.

Second, the argument that the trial court irrationally calculated the victim's future lost wages is belied by the record. The court used the amount the victim earned in the last full year he worked to project his future lost wages. This projected loss was, if anything, low since the evidence showed that the victim's annual earnings had been consistently rising and there was every reason to believe that this trend would have continued but for the injury. And the court reasonably accepted five and one-half years as the period for calculating future lost wages given the severity and persistence of the injury, and the victim's need for an eighth surgery. Lastly, the court subtracted from the award the amount of disability benefits the victim was projected to receive over the next five and one-half years.

In short, our review of the record shows that the trial court acted rationally in calculating the victim's future lost wages and did not abuse its discretion.

### C. *Arce Has Not Established that He Received Ineffective Assistance of Counsel.*

Arce contends that his trial counsel was ineffective because counsel did not seek a discount of the portion of the award compensating the victim for future lost wages to account for its present-day value. We are not persuaded.

Arce's argument relies on *People v. Pangan* (2013) 213 Cal.App.4th 574 (*Pangan*). In *Pangan*, the Fourth District Court of Appeal concluded that the defendant's trial counsel was ineffective by not requesting that the trial court account for "the time value of money" in calculating a portion of a restitution award that, like the portion of the award at issue here, was to compensate the victim for a "diminished or lost stream of future payments."[7] (*Id*. at pp. 576-577, italics omitted.) In the Court of Appeal's view,

---

[7] *Pangan* did not address whether defendants have a right to counsel in proceedings to award direct restitution. We need not resolve that threshold issue here because the parties did not raise it, and Arce's claim fails for other reasons.

9

recognizing and applying the concept of the time value of money—the principle that the current value of a right to receive a series of future payments is ordinarily less than the sum of those payments—is necessary in calculating a victim's future economic loss and "is just not all that hard. . . . For better or worse, criminal law victim restitution defense entails at least *some* acquaintance with the idea of the time value of money." (*Id.* at pp. 581, 583, italics in original.) The Court of Appeal concluded that counsel was ineffective in not seeking a time-value discount because whether the trial court "used a very low discount rate as a reflection of the relatively low rates of inflation and mortgage interest rates since 2008 . . . [o]r . . . chose[] a higher rate based on other market metrics[,] . . . a full value award was too high," and the Court of Appeal could "see no way in which [counsel] had anything to lose by raising the need to discount [the award] to present value." (*Id.* at p. 584.) As the record is here, the record in *Pangan* was silent about why the defendant's trial counsel did not ask for such a discount. For reasons we shall explain, we disagree with *Pangan*'s suggestion that a court considering such a record on direct appeal can decide as a matter of law that counsel was ineffective for not having sought a time-value discount.

The law governing claims of ineffective assistance of counsel is well-settled. The federal and state constitutions guarantee criminal defendants the right to competent representation by counsel. (U.S. Const., 6th Amend.; Cal. Const., art. I, § 15; *People v. Vines* (2011) 51 Cal.4th 830, 875.) "To prevail on a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient . . . [because] the representation fell below an objective standard of reasonableness under prevailing norms" and that the deficient performance was prejudicial because "there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." (*People v. Benavides* (2005) 35 Cal.4th 69, 92-93.)

In considering such a claim, "a reviewing court defers to counsel's reasonable tactical decisions, and there is a presumption counsel acted within the wide range of reasonable professional assistance." (*People v. Mai* (2013) 57 Cal.4th 986, 1009.) " ' "Tactical errors are generally not deemed reversible, and counsel's decisionmaking

10

must be evaluated in the context of the available facts." ' " (*People v. Stanley* (2006) 39 Cal.4th 913, 954.)  Because the presumption of counsel's competence can typically be rebutted only with evidence outside the record, ineffective-assistance claims are normally raised in habeas corpus proceedings where such evidence can be presented.[8]  (See *Mai*, at p. 1009.)  A reversal on direct appeal is warranted only if "(1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation." (*Ibid*.)  Because the record here is silent as to why Arce's trial counsel did not seek a time-value discount of the award for future lost wages, only the third circumstance justifying a reversal on direct appeal—that there can be no satisfactory explanation—is potentially applicable.  We therefore turn to consider this justification, and we conclude that there *could* be satisfactory explanations for why Arce's counsel did not ask for a time-value discount.

To begin with, Arce's trial counsel may have not sought a time-value discount because of the applicable evidentiary burdens.  To support any such request, Arce would have been required to present evidence, most likely through expert testimony, of appropriate measures for the discount—such as the projected rates of interest and inflation (or deflation).[9]  (See *Schiernbeck v. Haight* (1992) 7 Cal.App.4th 869, 877; *Hurlbut v. Sonora County Hospital* (1989) 207 Cal.App.3d 388, 409.)  Even though normal evidentiary rules are relaxed in restitution proceedings, these measures cannot be

---

[8] We express no opinion whether Arce's claim could be raised in a petition for writ of habeas corpus.

[9] In *Pangan*, the Court of Appeal held, without qualification, that "[i]t is an abuse of discretion [for a trial court] not to account for the time value of money in determining a victim's economic loss based on a diminished or lost stream of future payments," although it declined to reverse the award on this basis because it also concluded that the defendant had waived the issue.  (*Pangan*, *supra*, 213 Cal.App.4th at pp. 576-577, 581-582, italics omitted.)  We disagree with the notion that a trial court has a duty to sua sponte apply a time-value reduction even when there is no evidence or stipulation to establish a discount rate or measure.  *Pangan* itself recognized the need for evidence when it stated that on remand, "[o]bviously, the trial court will have to take evidence on the issue of the appropriate discount rate and calculations." (*Id.* at p. 586.)

pulled out of thin air. (See *People v. Prosser* (2007) 157 Cal.App.4th 682, 692.) Arce's counsel, who was retained, may have concluded that the cost of presenting evidence to support the request was not worth a speculative reduction or would be greater than any potential reduction. Or he may have simply believed that raising the issue would undercut his primary argument that *no* future lost wages could be awarded.

Arce's counsel also may have not sought a time-value discount because the amount of restitution sought by the prosecution was relatively low, and he believed that challenging it might lead to increased scrutiny and a higher award. He may have believed, for example, that if the trial court reexamined the victim's future lost earnings it would increase its base amount of the victim's projected annual earnings ($41,739) in light of the evidence that the victim's earnings had been progressively rising. Or he may have believed that the court would increase the award by adding time to the multiplier of the prosecution's projected five and one-half year recovery period. He also may have understood that the time-value principle worked against Arce to the extent that its application to the future disability benefits would have reduced the offset Arce received for them. Accepting an award that is favorable in some aspects may make particular sense when the award is not likely to be reduced by much because the potential discount rate is low.

We recognize that *Pangan* rejected a similar proposed explanation. There, the Attorney General argued that trial counsel might not have sought a time-value discount "because [the award] represented 'a good deal,' " since the award excluded the victim's claim for another sizeable loss. (*Pangan*, *supra*, 213 Cal.App.4th at p. 584.) In dismissing this explanation, the court found that "there [was] nothing in the record to suggest that exclusion was an oversight or that the [trial] court would punish [the defendant] for bringing it up." (*Ibid.*) The court added, "We see no way in which [the defendant]'s trial attorney had anything to lose by raising the need to discount the [award for future economic loss] to present value." (*Ibid.*) But we do not believe that a record's silence on the possible consequences of raising an issue establishes that negative consequences were impossible. We conclude that trial counsel here could have

12

reasonably believed that Arce *did* have something to lose because the trial court might have increased its award for future lost wages.

Because it is possible that Arce's trial counsel had a rational tactical ground for not seeking a time-value discount, Arce's claim of ineffective assistance of counsel fails.

### III.
### DISPOSITION

The judgment is affirmed.


_____
Humes, J.


We concur:


_____
Reardon, Acting P.J.


_____
Rivera, J.


*People v. Arce* (A138376)

13

Trial Court:                    San Francisco County Superior Court

Trial Judge:                    Honorable Philip Moscone

Counsel for Appellant:          Donn Ginoza, under appointment by the First District
                                Appellate Project

Counsel for Respondent:         Kamala D. Harris, Attorney General, Dane R. Gillette,
                                Chief Assistant Attorney General, Gerald A. Engler,
                                Senior Assistant Attorney General, Catherine A. Rivlin,
                                Supervising Deputy Attorney General, Allan Yannow,
                                Deputy Attorney General