Filed 8/16/16  P. v. Webb CA1/5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| **THE PEOPLE,**<br><br>　　　**Plaintiff and Respondent,**<br><br>**v.**<br><br>**DONALD KEVIN WEBB,**<br><br>　　　**Defendant and Appellant.** | **A144052**<br><br>**(Del Norte County**<br>**Super. Ct. No. CR149029)** |

A jury convicted appellant Donald Kevin Webb of first degree burglary (Pen. Code, §§ 459, 460)[1] and resisting, obstructing, or a delaying a police officer (§ 148, subd. (a)(1)) and the trial court sentenced him to state prison.  Webb appeals.  He contends: (1) the court erred by excluding evidence of his codefendant's guilty plea; (2) the court erroneously admitted evidence of a defense witness's misdemeanor convictions for impeachment; and (3) trial counsel rendered ineffective assistance by failing to object to inadmissible evidence.

We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

The prosecution charged Webb and Zachariah Dungan with first degree burglary (§§ 459, 460) and resisting, obstructing, or a delaying a police officer (§ 148, subd. (a)(1)).  The information alleged various sentencing enhancements.  Before trial, Dungan pled guilty to burglary (§ 459).

---

[1]　　　Unless noted, all further statutory references are to the Penal Code.

1

*Prosecution Evidence*

On a wet and rainy January 2014 morning, 72-year-old Karen Barkhurst was at home on Lower Lake Road in Crescent City. From her bedroom, Barkhurst heard her burglar alarm and went downstairs to investigate. Barkhurst did not see anything unusual, so she returned upstairs and closed and locked her bedroom door. Barkhurst "continued hearing a noise" so she "grabbed [her] pistol," opened her bedroom door, and saw two young men wearing dark hooded sweatshirts "standing right there in front of [her]." One man said "'she's got a gun'" and both men ran. Barkhurst saw the men's faces for "[s]econds, if that." She chased the men "as fast as [she] could" and saw them leaving her driveway in a gray car.

Barkhurst called 911 and told the operator "two boys" broke into her house and left in a gray four-door sedan similar to a Toyota Celica that "sounded like it needed a muffler."[2] She said one boy wore a black hooded sweatshirt and the other a "gray sweatshirt with a hood over him." Barkhurst told the 911 operator she could not see the boys' faces. Later that day, Barkhurst noticed her "garage had been ransacked" and her spare car key, safe deposit box key, garage door opener, and identification card were missing.

Del Norte Sherriff's Sergeant Gene McManus received a dispatch of a burglary in progress on Lower Lake Road. According to dispatch, "[t]wo white male adults, one in a black hoodie, one in a gray sweatshirt" fled in gray car "similar to a Toyota" and were driving southbound on Lower Lake Road. Shortly thereafter, Sergeant McManus saw a gray Honda sedan with at least two occupants on Lower Lake Road. Sergeant McManus tried to stop the car, but it accelerated away from him. He followed the Honda for approximately half a mile; eventually, the car stopped at a dead end. Three people got out of the car: a male driver, a male front passenger, and a female back seat passenger.

---

[2] The court admitted a transcript of the 911 call. When questioned by defense counsel, Barkhurst said it was "entirely possible" one intruder was female. Barkhurst could not identify Webb or Dungan at an infield identification, but she was "fifty percent sure" Webb's car was the one she saw at her house.

2

Sergeant McManus repeatedly ordered the three people to stop but "they did not comply."

Sergeant McManus knew Webb, and saw he was wearing a "gray, hooded sweatshirt" with a plaid pattern. Sergeant McManus later identified the male passenger as Dungan; he wore a black hooded sweatshirt "with some gray in it[.]" The female passenger, Candace Swain, wore a dark hooded sweatshirt. Dungan and Swain ran towards a wooded area. Sergeant McManus and other law enforcement officers eventually found and arrested Dungan and Swain.

Webb also ran from the Honda. About 15 to 20 minutes later, a nearby resident called 911 after seeing a man "run into her garage." Sheriff's deputies went to the residence, found Webb hiding behind a horse trailer, and arrested him. Webb was wearing a T-shirt, not the gray hooded sweatshirt. Webb's pants were more wet than his T-shirt. Law enforcement officers could not find the gray sweatshirt, but they found Barkhurst's property, including her keys and garage door opener, in Webb's car. Law enforcement officers also found flashlights, a camouflage glove, and bolt cutters — a common "burglary tool"— in Webb's car.

Law enforcement officers went to Barkhurst's home and found numerous muddy shoe prints on her driveway and near her garage. The prints had an identifiable tread pattern and were "kind of all over different directions." Officers found a cigarette butt with Webb's DNA on the steps leading from the garage into Barkhurst's house. Inside Barkhurst's house, officers found dirt, mud, and a cigarette lighter. The jury compared the tread on Webb's shoes to pictures of the shoe prints.

*Defense Evidence*

In 2014, Tanya Tackett dated Webb's brother, Jeff.[3] On the day of the burglary, Jeff was visiting Tackett. At some point, Webb knocked on Tackett's door. He was wet and asked for a clean jacket. Webb smoked constantly, and "always" had a cigarette in his mouth. Webb entered the house, but Dungan and Swain stayed outside, sitting in

---

[3]  We refer to Jeff by his first name for clarity and convenience.

3

Webb's gray Honda. Webb spent about 15 minutes in Tackett's house before he realized his car was gone. Webb's car was "loud." Jeff drove Webb and Tackett toward Lower Lake Road to look for Webb's car. After hearing a broadcast of a burglary on a police scanner, Jeff drove toward Lower Lake Road. They found Webb's car on Lower Lake Road, and saw Dungan and Swain. Webb ran toward his car. Jeff and Tackett left.

On cross-examination, Tackett conceded Webb was "like a brother" to her. She denied helping Jeff evade arrest in his criminal case.

*Verdict and Sentence*

After deliberating for one hour, the jury convicted Webb of first degree burglary (§§ 459, 460) and resisting, obstructing, or a delaying a police officer (§ 148, subd. (a)(1)). Webb admitted various prior convictions (§ 667.5) and the court sentenced him to nine years in state prison.

DISCUSSION

I.

*The Court Properly Excluded Dungan's Plea,*
*and Any Assumed Error Was Harmless*

Webb contends the court erred by excluding evidence that Dungan pled guilty to burglary.

A.      The Court Excludes Evidence of Dungan's Plea

Dungan pled guilty to burglary. Before opening statements, the court directed "there not be reference to Mr. Dungan entering a guilty plea. . . . [T]hat's consistent with the law and Mr. Webb stands alone at this trial as to whether or not he did it." Later, Webb urged the court to take judicial notice of Dungan's plea. The prosecution objected. The court determined the plea was "not relevant as to whether Mr. Webb's guilt has been proved in this case or will be proved in this case. . . . [N]obody's theory is that there was only one person involved in the burglary. So it also appears to me to be hearsay, . . . it's being offered for [truth] of the matter asserted that he pleaded guilty with no opportunity for cross-examination from the [P]eople about . . . who else was there[.]"

4

Responding to the hearsay issue, defense counsel said he subpoenaed Dungan, "[a]nd so he would be available if the judicial notice was denied, but an admission can come in." Counsel continued: "as to the judicial notice, I believe that it's relevant and that it changes the probability of whether my client is guilty. It changes it from one out of three to one out of two. I believe it's also allowing the jurors to be misled and causes confusion in that they will be considering one of the possible perpetrators who has already actually been eliminated because he pled guilty." Defense counsel noted Dungan would refuse to testify because "sentencing hasn't been completed" and asked, "would the Court consider allowing Mr. Dungan to testify to the sole purpose of whether he [pled] guilty to the burglary?" The court responded that if Dungan testified, "he would be subject to cross-examination about . . . what happened. . . . [¶] I'm not going to let you just put him on [the witness stand] to say he's guilty and you don't have to answer any other questions."

The court said Dungan could testify, but the court would not take judicial notice and tell the jury what plea Duncan entered. Then defense counsel asked if Dungan invoked his Fifth Amendment right to silence, whether counsel could offer evidence of Dungan's plea based on his unavailability as a witness. The court declined defense counsel's request and excluded evidence of Dungan's guilty plea on hearsay and relevance grounds.

B.     The Court Did Not Err by Excluding Dungan's Plea, and Any Assumed Error was Harmless

Webb claims he was entitled to present evidence that "another person committed the charged offense." "No evidence is admissible except relevant evidence." (Evid. Code, § 350.) Evidence is relevant if it has "any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.) Evidence of third party culpability "'must link the third person either directly or circumstantially to the actual perpetration of the crime. In assessing an offer of proof relating to such evidence, the court must decide whether the evidence could raise a

5

reasonable doubt as to defendant's guilt . . . .'" (*People v. Basuta* (2001) 94 Cal.App.4th 370, 386-387, quoting *People v. Bradford* (1997) 15 Cal.4th 1229, 1325.)

The court did not abuse its discretion by determining Dungan's guilty plea was irrelevant. (*People v. Andrade* (2015) 238 Cal.App.4th 1274, 1289 [no abuse of discretion excluding third party culpability evidence].) The prosecution's theory of the case was two men burglarized Barkhurst's home. Dungan's admission he burglarized the home did not raise a reasonable doubt as to Webb's guilt — in other words, it did not tend to prove Webb did not also participate in the burglary. The court therefore properly excluded Dungan's plea for lack of relevance. (See *People v. Cummings* (1993) 4 Cal.4th 1233, 1294 [evidence that murder defendant's wife "had been tried and convicted of being an accessory after the murder" was "not relevant to any issue" in the defendant's prosecution].)

Even if we assume for the sake of argument the court erred by excluding Dungan's plea, Webb cannot demonstrate prejudice. (*People v. Cummings, supra,* 4 Cal.4th at p. 1295; *People v. Watson* (1956) 46 Cal.2d 818, 836.) Barkhurst consistently described the intruders as "boys" and "two young gentlemen." That Barkhurst acknowledged the possibility one of the intruders could have been female does not demonstrate Webb would have received a more favorable result had the court admitted evidence of Dungan's plea. The evidence against Webb was strong. Webb fled when Sergeant McManus tried to detain him; when the officers found Webb, his T-shirt was not as wet as his pants, suggesting Webb removed his sweatshirt to change his appearance and avoid detection. Additionally, Webb's cigarette butt was found near the door leading from Barkhurst's garage into her house, and burglary tools — flashlights, bolt cutters, and a glove — were found in his car. Webb's alternate interpretation of the evidence does not persuade us there is a reasonable likelihood he would have received a more favorable result had the court admitted evidence of Dungan's plea.

6

## II.

*The Court's Erroneous Admission of Tackett's Misdemeanor*
*Conviction Was Harmless*

Webb claims the court erred by allowing the prosecutor to impeach Tackett with her misdemeanor petty theft conviction.

A.      Tackett's Cross-Examination

On cross-examination, the prosecutor asked Tackett whether she was under the influence of any drugs and the following colloquy occurred:

"[Prosecutor]: So absolutely no drugs in your system right now?

"[Tackett]: No.

"[Prosecutor]: What about methamphetamine?

"[Tackett]: No.

"[Prosecutor]: Are you saying you never use methamphetamine?

"[Tackett]: I never said that.

"[Prosecutor]: Okay.  You —

"[Tackett]: [In] 2005, I went to a rehabilitation center.

"[Prosecutor]: You had been labeled as a methamphetamine addict before; is that not correct?

"[Tackett]: Oh, I'm sure I was in 2005 when I went to prison."

The prosecutor asked Tackett whether she was convicted of petty theft in 2003, and Tackett responded, "I guess so.  I don't recall.  I was on drugs then.  Might have been."  Defense counsel objected "as to misdemeanors" and the court overruled the objection, concluding, "[i]t's a crime of moral turpitude."  The prosecutor showed Tackett her rap sheet and she admitted the misdemeanor petty theft conviction and 2004 and 2005 felony convictions for possession of a controlled substance, assault with force likely to produce great bodily injury, and failure to appear.  Tackett also admitted serving five years and eight months in prison.

7

B.      Admitting Tackett's Misdemeanor Conviction was Harmless Error

Webb argues the court erred by permitting the prosecutor to impeach Tackett with her misdemeanor petty theft conviction. The Attorney General concedes the court erred by admitting the conviction but contends any error was harmless. We agree.

"Misdemeanor convictions themselves are not admissible for impeachment, although evidence of the underlying *conduct* may be admissible subject to the court's exercise of discretion." (*People v. Chatman* (2006) 38 Cal.4th 344, 373.) As our high court has explained, "evidence of a misdemeanor *conviction*, . . . is inadmissible hearsay when offered to impeach a witness's credibility." (*People v. Wheeler* (1992) 4 Cal.4th 284, 300, fn. omitted.) But "[n]othing in the hearsay rule precludes proof of impeaching misdemeanor misconduct by other, more direct means, including a witness's admission on . . . cross-examination that he or she committed such conduct." (*Id.* at p. 300, fn. 14; *People v. Cadogan* (2009) 173 Cal.App.4th 1502, 1515, fn. 4.) Here, the prosecutor did not ask Tackett about the conduct underlying her petty theft conviction, nor use "qualifying court records to prove not only the fact of conviction, but also that the offense reflected in the record occurred." (*People v. Duran* (2002) 97 Cal.App.4th 1448, 1460; see Evid. Code, § 452.5.) The court therefore erred by allowing the prosecutor to impeach Tackett with her misdemeanor petty theft conviction. (*People v. Capistrano* (2014) 59 Cal.4th 830, 866-867 (*Capistrano*).)

Any error in admitting Tackett's misdemeanor petty theft conviction was harmless. In addition to her petty theft conviction, Tackett suffered felony convictions for assault with force likely to produce great bodily injury and failure to appear, both of which involve moral turpitude and were properly used to impeach Tackett. (*People v. Elwell* (1988) 206 Cal.App.3d 171, 177 [assault "by means of force likely to produce great bodily injury" in violation of section 245, subdivision (a)(1) is "a crime of moral turpitude"]; *People v. Maestas* (2005) 132 Cal.App.4th 1552, 1556-1557 ["failure to appear is a crime of moral turpitude" and holding felony convictions involving moral turpitude "may be used to impeach a witness at a criminal proceeding"].)

8

Additionally, excluding Tackett's misdemeanor petty theft conviction "would not have produced a significantly different impression of her credibility." (*Capistrano, supra,* 59 Cal.4th at p. 869 [error in restricting cross-examination regarding witness's petty theft conviction was harmless].) The jury could have concluded Tackett's version of the incident was implausible, or rejected her testimony because she had a motive to testify on Webb's behalf. (See Evid. Code, § 780, subd. (f) [witness's "bias, interest, or other motive" is relevant in assessing a witness's credibility]; CALCRIM No. 226.) Finally, and as discussed above, evidence of Webb's guilt was strong, and Webb has not demonstrated he would have received a more favorable result had the court excluded evidence of Tackett's misdemeanor petty theft conviction. (*People v. Watson, supra,* 46 Cal.2d at p. 836; *People v. Wade* (1996) 48 Cal.App.4th 460, 469 ["no substantial likelihood that disclosure of the nature of the prior convictions affected the jury's verdict"].)

III.

*Webb's Ineffective Assistance of Trial Counsel Claim Fails*

Webb claims trial counsel rendered ineffective assistance by failing to object to: (1) questions the prosecutor asked Tackett on cross-examination; (2) statements Barkhurst made when shown Webb's car; and (3) a law enforcement officer's characterization of bolt cutters as a "burglary tool." To demonstrate ineffective assistance of trial counsel, Webb must show counsel's representation fell below prevailing professional norms and he was prejudiced by that deficiency. (*In re M.V.* (2014) 225 Cal.App.4th 1495, 1528; *Strickland v. Washington* (1984) 466 U.S. 668, 694 (*Strickland*).)

Webb contends trial counsel rendered ineffective assistance by failing to object to inadmissible evidence regarding Tackett's drug use and petty theft conviction, and whether she shielded Jeff, Webb's brother, from arrest. Assuming for the sake of argument trial counsel's failure to object constituted inadequate representation, Webb has not established that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

9

(*Strickland, supra,* 466 U.S. at p. 694.) As discussed above, the evidence of Webb's guilt was overwhelming, and it is not reasonably probable a different result more favorable to Webb would have been reached in the absence of trial counsel's purported errors. (*People v. Archer* (1989) 215 Cal.App.3d 197, 207.)

Next, Webb complains trial counsel's failure to object to Barkhurst's opinion that she was "fifty percent sure" Webb's car left her home after the burglary was ineffective. According to Webb, there was no "conceivable purpose" for failing to object. We disagree. Trial counsel had a rational tactical ground for not objecting, because Barkhurst's testimony was consistent with the defense theory that Dungan and Swain took Webb's car and committed the burglary while he visited Tackett. Finally, Webb contends trial counsel rendered ineffective assistance by failing to object when the prosecution offered evidence that bolt cutters, a "burglary tool[,]" were found in Webb's car. We are not persuaded. An objection was unnecessary because the jury could infer — as defense counsel suggested during closing argument — that Dungan and Swain put the bolt cutters in Webb's car when they took the car from Tackett's house. Webb's ineffective assistance of counsel claim fails. (*People v. Arce* (2014) 226 Cal.App.4th 924, 932.)

## DISPOSITION

The judgment is affirmed.

_____

Jones, P.J.

We concur:

_____

Simons, J.

_____

Needham, J.