Filed 9/18/20  P. v. Connell CA3

## NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>  v.<br><br>JEFFREY ORION CONNELL,<br><br>      Defendant and Appellant. | C090612<br><br>(Super. Ct. No. STK-CR-FER-2019-0006531) |

Defendant Jeffrey Orion Connell was convicted of unlawfully driving or taking a vehicle and receiving a stolen vehicle.  The trial court imposed a prior prison term enhancement.  On appeal defendant contends (1) he received ineffective assistance of counsel because his counsel failed to request a pinpoint instruction on a "claim-of-right" defense; (2) his felony conviction for receiving a stolen vehicle must be reduced to a misdemeanor because the jury found him guilty without the additional finding that the value of the vehicle was more than $950; and (3) his prior prison term enhancement must

be stricken based on the retroactive application of Senate Bill No. 136 (2019-2020 Reg. Sess.) (Senate Bill 136). We will modify the judgment to strike the enhancement for defendant's prior prison term. We otherwise affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Defendant made a claim with his automobile insurance company, Progressive, after he was involved in a traffic collision. On April 15 or 16, 2019, K.N. went with defendant to Enterprise Rent-A-Car (Enterprise) to rent a vehicle. After Enterprise refused to rent to defendant, he added K.N. to his insurance policy so she could rent a car for him. On April 17, 2019, defendant and K.N. returned to Enterprise and K.N. rented a 2017 Hyundai Accent under defendant's insurance claim. That day, K.N. overheard defendant talking on the phone with someone from Progressive who told him that the rental car had to be returned to Enterprise two days later, on April 19. K.N. provided the deposit for the rental car, and she was the only person authorized to drive the car under the rental agreement. The value of the car was about $15,000. K.N. did not want to take the financial risk of defendant driving the rental car, so she told him that he could drive her truck and she would drive the rental car. She did not give defendant permission to drive the rental car.

R.T., the Enterprise branch manager, testified that the reservation for the rental car from Progressive had been made under K.N.'s name. K.N. signed the contract, and the vehicle was released to her. Progressive authorized the rental for up to 30 days, or for a reasonable time for repair. The rental contract listed the day after it was rented as a "placeholder" return date, but R.T. explained an insurance company will often extend the date depending on whether the damaged vehicle is being repaired or is determined to be totaled. In R.T.'s experience, people who are not authorized to drive rental cars still drive them "from time to time."

After K.N. rented the car, she was sick for a little over a week and stayed with her neighbor, K.P. K.N. testified that either Enterprise or Progressive called her on April 18

2

and told her that the rental car had to be returned the next day. On April 19, defendant came to K.P.'s house, and K.N. asked him to call Enterprise and arrange to have the car picked up from K.P.'s house. She did not tell defendant what day the car had to be returned but he was aware it was due back to Enterprise. Defendant told K.N. he would take care of it. The keys to the rental car had been hanging inside K.P.'s house near the front door.

K.P. testified that while K.N. was staying with her, she saw defendant sitting in the rental car parked outside of her house and saw him drive away. Three or four days later, K.P. told K.N. that she had seen defendant drive away in the rental car. K.N. went through her text and phone messages and discovered a call from Enterprise and learned that the car had not been returned to Enterprise; she called the sheriff's department and reported the car stolen. K.N. called Progressive that same day. She also attempted to contact the person she believed had taken the car by calling his phone and leaving voicemail messages.

On May 9, 2019, Stockton Police Officer Derek Braga conducted a traffic stop on a 2017 Hyundai Accent driven by defendant. The vehicle had a paper license plate from a dealership, which was a violation of the Vehicle Code. Defendant gave Officer Braga his driver's license, but he did not have registration or proof of insurance. Defendant told Officer Braga that he had purchased the car that day from a "Mexican guy" in Tracy. Officer Braga asked him what year the car was and defendant replied, "2016, I believe. It was a rental." Officer Braga checked the car's VIN and learned that the car had been reported stolen, and later determined the registered owner was the rental car company. Defendant then told Officer Braga that his friend, K.N., had rented the car for him on April 19 on his "insurance claim." He told Officer Braga that he had been notified by Progressive three or four days earlier that the car had been reported stolen. Defendant stated he had K.N. taken "off of the claim," and he did not know the car was "still stolen." Defendant claimed he was planning to return it and he claimed to have

3

"paperwork" from Progressive assuring him that the car was no longer considered stolen and acknowledging he planned to return it.

Following a trial, a jury found defendant guilty of one count of unlawfully driving or taking a vehicle (Veh. Code, § 10851, subd. (a); count 1), and one count of receiving a stolen vehicle (Pen. Code, § 496d, subd. (a); count 2).[1] As to count 2, the jury found that the value of the vehicle was more than $950. In a bifurcated proceeding, the trial court found defendant had a prior Vehicle Code section 10851, subdivision (a) conviction (§ 666.5, subd. (a)) and had served a prior prison term (§ 667.5, subd. (b)). The trial court sentenced defendant to a split sentence pursuant to section 1170, subdivision (h)(5)(b).

On count 1, the court sentenced defendant to the middle term of three years, plus one year for the prior prison term enhancement, for an aggregate term of four years. The court then ordered that defendant serve three years in county jail and the remaining one year under mandatory supervision, stayed defendant's three-year sentence on count 2 pursuant to section 654, and ordered that the prior prison term enhancement attached to count 2 be stricken as a matter of law.

## DISCUSSION

### I

### *Ineffective Assistance of Counsel*

Defendant contends his counsel was ineffective in failing to request a pinpoint instruction on a claim-of-right defense or argue this theory in his closing argument. We disagree.

A.    *Additional background*

Defense counsel proposed at trial that the court include CALCRIM No. 1751, innocent intent as a defense to receiving stolen property, in its instructions to the jury.

---

[1]    Undesignated statutory references are to the Penal Code.

Defense counsel subsequently withdrew the request because he did not "think it actually fits our theory of the defense" because "[h]e never received stolen property in the first place." The trial court believed, however, that it had a sua sponte duty to give the instruction because the defense was supported by substantial evidence. Defense counsel told the court to "just leave it in." Accordingly, the court instructed the jury with CALCRIM No. 1751 on innocent intent as a defense to the charge of receiving stolen property as follows: "The defendant is not guilty of receiving stolen property if he intended to return the property to its owner when he withheld the property. [¶] If you have a reasonable doubt about whether the defendant intended to return the property to its owner when he withheld the property, you must find him not guilty of receiving stolen property. [¶] This defense does not apply if the defendant decided to return the property to its owner only after he wrongfully withheld the property. The defense also does not apply if the defendant intended to return the property to its owner when he withheld it, but later decided to withhold the property."

> B. *Analysis*

To establish ineffective assistance, a defendant must show (1) counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and (2) the deficient performance prejudiced the defendant. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688, 693-694 [80 L.Ed.2d 674, 693-694, 697-698] (*Strickland*); *People v. Ledesma* (1987) 43 Cal.3d 171, 216-218.)

In measuring counsel's performance, judicial review is highly deferential. (*Strickland, supra*, 466 U.S. at p. 689; *In re Andrews* (2002) 28 Cal.4th 1234, 1253.) There is a presumption that counsel acted within the wide range of reasonable professional assistance. (*People v. Mai* (2013) 57 Cal.4th 986, 1009.) When, as here, the strategic reasons for challenged decisions are not apparent from the record, we will not find ineffective assistance of counsel unless there could have been " ' "no conceivable

5

tactical purpose" ' " for counsel's acts or omissions.  (*People v. Earp* (1999) 20 Cal.4th 826, 896; see *People v. Arce* (2014) 226 Cal.App.4th 924, 930.)

"The claim-of-right defense provides that a defendant's good faith belief, even if mistakenly held, that he has a right or claim to property he takes from another negates the felonious intent necessary for conviction of theft or robbery."  (*People v. Tufunga* (1999) 21 Cal.4th 935, 938.)  CALCRIM No. 1863 provides a pinpoint instruction on the claim-of-right defense.  It states:

"If the defendant obtained property under a claim of right, (he/she) did not have the intent required for the crime of (theft/[or] robbery).

"The defendant obtained property under a claim of right if (he/she) believed in good faith that (he/she) had a right to the specific property or a specific amount of money, and (he/she) openly took it.

"In deciding whether the defendant believed that (he/she) had a right to the property and whether (he/she) held that belief in good faith, consider all the facts known to (him/her) at the time (he/she) obtained the property, along with all the other evidence in the case.  The defendant may hold a belief in good faith even if the belief is mistaken or unreasonable.  But if the defendant was aware of facts that made that belief completely unreasonable, you may conclude that the belief was not held in good faith.

"[The claim-of-right defense does not apply if the defendant attempted to conceal the taking at the time it occurred or after the taking was discovered.]  [¶] . . . [¶]

"If you have a reasonable doubt about whether the defendant had the intent required for (theft/[or] robbery), you must find (him/her) not guilty of _____ <insert specific theft crime>."  (CALCRIM No. 1863.)

The claim-of-right defense is generally limited "to the perpetrator who merely seeks to effect what he believes in good faith to be the recovery of specific items of his *own* personal property."  (*People v. Waidla* (2000) 22 Cal.4th 690, 734, fn. 12, italics added.)  Moreover, the defense "does not apply where, 'although defendant may have

6

"believed" he acted lawfully, he was aware of contrary facts which rendered such a belief wholly unreasonable, and hence in bad faith.' " (*People v. Wooten* (1996) 44 Cal.App.4th 1834, 1849.) Whether the defendant concealed his activities or did not conceal them is relevant to whether he had a good faith belief. (*People v. Fenderson* (2010) 188 Cal.App.4th 625, 644.)

Counsel in this case was not asked for an explanation for failing to request a jury instruction on claim of right or arguing this defense in closing, and there is a satisfactory explanation for not requesting or focusing on it. Defendant did not qualify for it. A claim-of-right instruction requires good faith belief that the defendant is taking property that he has a claim in or right to possess. (See *People v. Waidla, supra*, 22 Cal.4th at p. 734, fn. 12; see also *People v. Tufunga, supra*, 21 Cal.4th at pp. 938-939.) The rental car owned by Enterprise was not defendant's personal property. Defendant knew that Enterprise would not rent him a car. And the evidence shows that he was not authorized to drive the rental car under K.N.'s rental agreement with Enterprise. He therefore had no right or claim to the rental car at any point in time. Further, there is no substantial evidence that defendant possessed the car in good faith. He falsely told Officer Braga that he had bought the car from a "Mexican guy" just that day, which demonstrates a consciousness of guilt that is at odds with a good-faith belief that he had a claim or right to possess the rental car. He also admitted to Officer Braga that he knew the car had been reported stolen. Such evidence also belies his claim that his belief in his right to the property was held in good faith. (See *People v. Fenderson, supra*, 188 Cal.App.4th at p. 644 ["A lack of concealment is evidence that a defendant has a good faith belief in his or her right to the property at issue"].)

Further, a claim of ineffective assistance of counsel can be disposed of without inquiry into counsel's possible tactical reasons for his or her actions if the reviewing court can determine that even if there was attorney error, it was not prejudicial. (*People v. Kipp* (1998) 18 Cal.4th 349, 366-367; *Strickland, supra*, 466 U.S. at p. 697.) Even if

7

we were to assume, without deciding, that a claim-of-right defense was supported by the evidence and defense counsel was deficient in failing to request such a pinpoint instruction and focusing on the defense in closing argument, we cannot conclude defendant has established a reasonable probability such an instruction and a related discussion in closing argument would have affected the verdict.

The evidence against defendant was very strong. He admitted taking the car, that he did not have the right to use the car, that he was aware the car was reported as stolen, and the car was found in his possession after the fact. Further, the jury was instructed with CALCRIM No. 1800 that defendant had to have the requisite intent to be convicted. By finding defendant guilty of receiving a stolen vehicle, the jury necessarily found that he committed theft, i.e., took possession of property owned by someone else without the owner's consent, and when he took the property he intended to deprive the owner of it permanently or for an extended period of time. Additionally, the jury was instructed with CALCRIM No. 1820 that to find defendant guilty of unlawfully driving a vehicle, the jury had to find that he drove a vehicle belonging to another person without the owner's consent, and that he had the specific intent to deprive the owner of possession of the vehicle for any period of time. In convicting defendant of the charges, the jury necessarily concluded he had the intent to deprive the owner, Enterprise, of the property and rejected the theory that he believed the property belonged to him. Accordingly, we cannot conclude it was reasonably probable counsel's alleged deficient performance—his failure to request a claim-of-right instruction or argue this defense in closing—affected the verdict.

Because defendant has shown neither deficient performance, nor prejudice, we reject his claim of ineffective assistance.

8

## II

### *Conviction Under Section 496d*

Defendant argues that his felony conviction for a violation of section 496d, subdivision (a), receiving a stolen vehicle, must be reduced to a misdemeanor because the jury verdict form erroneously designated the offense, a "wobbler," as a misdemeanor. We disagree.

" 'Under California law, certain offenses may be classified as either felonies or misdemeanors. These crimes are known as "wobblers." ' " (*Robert L. v. Superior Court* (2003) 30 Cal.4th 894, 902-903, fn. 9.) Receiving a stolen vehicle in violation of section 496d, subdivision (a), is a wobbler offense. (*People v. Lara* (2019) 6 Cal.5th 1128, 1131.) "Proposition 47 amended section 496, the general statute that criminalizes receipt of stolen property, by making the offense a misdemeanor whenever the value of the property does not exceed $950. (§ 496, subd. (a) . . . .)" (*People v. Orozco* (2020) 9 Cal.5th 111, 115 (*Orozco*).) Recently, our Supreme Court held that the "revision to section 496, making the offense of receiving stolen property a misdemeanor when the value of the property is $950 or less, does not extend to convictions for receiving a stolen vehicle under section 496d." (*Ibid.*)

In this case, because the trial court did not have the benefit of our high court's decision in *Orozco*, the court stated during the discussion on jury instructions that for the crime of receiving a stolen vehicle to be a felony, the value of the vehicle had to be more than $950 or it was a misdemeanor offense. The trial court then proposed that the verdict forms include "a guilty and a not guilty of receiving stolen property, a misdemeanor. And then there's a special finding [that the value is more than $950]. And then that allegation in itself would say the word 'felony.' " The court acknowledged that it was "a little different than we're used to doing—well, it's fairly new, couple years old, but, you know, that's new in the law world."

While it was erroneous to include a misdemeanor designation on the jury form and allow the jury to make a separate finding on whether the value of the car was over $950 in order to make the offense a felony, the error was harmless. As defendant acknowledges, "[t]he jury's verdict was essentially a finding on the degree of [defendant's] violation of section 496d; a finding which, strictly speaking, it had no authority to make." He contends that "[t]he error was that the trial court assumed without any authority that section 496d, subdivision (a), was a felony only with an additional finding that the value of the stolen property was over $950." As our high court subsequently clarified, such a finding is unnecessary and the offense of receiving a stolen vehicle remains a wobbler regardless of the value of the stolen car. (*Orozco, supra*, 9 Cal.5th at p. 115.)

"A wobbler is deemed a felony unless charged as a misdemeanor by the People or reduced to a misdemeanor by the sentencing court under section 17, subdivision (b). [Citation.]" (*Robert L. v. Superior Court, supra*, 30 Cal.4th at pp. 901-902, fn. 7.) "The five specified circumstances in which a wobbler will be treated like a misdemeanor are: (1) when the court imposes a judgment of punishment other than imprisonment in the state prison (§ 17, subd. (b)(1)); (2) when the court, upon committing the defendant to the Youth Authority, designates the offense to be a misdemeanor (§ 17, subd. (b)(2)); (3) when at the time the court grants probation, it does not impose a sentence, or, upon application of the defendant, the court declares the offense a misdemeanor (§ 17, subd. (b)(3)); (4) when the prosecutor designates the offense a misdemeanor (§ 17, subd. (b)(4)); and (5) when the court, at or before the preliminary hearing, determines that the offense is a misdemeanor (§ 17, subd. (b)(5))." (*Ibid.*) Here, the People charged the crime as a felony. The jury found defendant guilty of a violation of section 496d, subdivision (a). Before sentencing, the trial court denied defendant's motion to reduce his felony conviction to a misdemeanor and listed the reasons for its decision. The court then imposed and stayed felony sentence. Accordingly, the trial court understood its

10

authority to determine whether defendant's offense was a felony or a misdemeanor, despite the error in designating the wobbler offense a misdemeanor on the jury form, and the court declined to reduce it to a misdemeanor. Defendant's argument that the jury effectively acquitted him of a felony based on the verdict form designating the offense a misdemeanor is unavailing. We reject his claim.

### III

*Senate Bill 136 (2019-2020 Reg. Sess.)*

In his supplemental brief, defendant claims his prior prison term enhancement must be vacated based on the retroactive application of Senate Bill 136 (2019-2020 Reg. Sess.). The People agree.

On October 8, 2019, the Governor signed Senate Bill 136 (2019-2020 Reg. Sess.), which amended section 667.5, effective January 1, 2020 (Stats. 2019, ch. 590, § 1). Senate Bill 136 narrowed eligibility for the one-year prior prison term enhancement to those who have served a prior prison sentence for a sexually violent offense, as defined in section 667.5, subdivision (b).

In this case, defendant's prior prison term was for the unauthorized use of another person's identifying information (§ 530.5, subd. (a)), which is not a sexually violent offense under Welfare and Institutions Code section 6600, subdivision (b). Defendant is therefore entitled to the ameliorative benefit of the statute if Senate Bill 136 (2019-2020 Reg. Sess.) is applied retroactively. We agree with the parties that the amendment to Senate Bill 136 should be applied retroactively in this case. Whether a particular statute is intended to apply retroactively is a matter of statutory interpretation. (See *People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, 307 [noting " 'the role of a court is to determine the intent of the Legislature' "].) Generally speaking, new criminal legislation is presumed to apply prospectively unless the statute expressly declares a contrary intent. (§ 3.) However, where the Legislature has reduced punishment for criminal conduct, an inference arises under *In re Estrada* (1965) 63 Cal.2d 740 that, " 'in the absence of

11

contrary indications, a legislative body ordinarily intends for ameliorative changes to the criminal law to extend as broadly as possible, distinguishing only as necessary between sentences that are final and sentences that are not.' " (*Lara*, at p. 308.) "A new law mitigates or lessens punishment when it either mandates reduction of a sentence or grants a trial court the discretion to do so. [Citation.]" (*People v. Hurlic* (2018) 25 Cal.App.5th 50, 56.)

There is nothing in Senate Bill 136 or its associated legislative history that indicates an intent that the court not apply this amendment to all individuals in defendant's position whose sentences are not yet final. Under these circumstances, we conclude *Estrada*'s inference of retroactive application applies. (See, e.g., *People v. Nasalga* (1996) 12 Cal.4th 784, 797-798 [applying *Estrada* inference of retroactivity to legislative changes to § 12022.6, subds. (a) & (b) enhancements].) Accordingly, we will direct the trial court to strike defendant's prior prison term enhancement and "remand the matter for resentencing to allow the court to exercise its sentencing discretion in light of the changed circumstances." (*People v. Jennings* (2019) 42 Cal.App.5th 664, 682.)

DISPOSITION

The trial court is directed to strike defendant's section 667.5, subdivision (b) prior prison term enhancement. In all other respects, the judgment is affirmed. The matter is remanded for resentencing not inconsistent with this opinion.

                                                \_\_\_\_KRAUSE_____, J.


We concur:

_____HOCH_____, Acting P. J.



_____RENNER_____, J.