Filed 4/11/22  P. v. Lopez CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>          v.<br><br>SOPHIA ROSE LOPEZ,<br><br>     Defendant and Appellant. | F081020<br><br>(Super. Ct. No. LF012145A)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Kern County.  John R. Brownlee, Judge.

Ross Thomas, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra and Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Daniel B. Bernstein, Catherine Chatman and Kathryn L. Althizer, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Defendant Sophia Rose Lopez was convicted by a jury of two counts of making criminal threats—one count for each of two victims.  She received an aggregate sentence

of seven years, four months in prison. She raises four contentions on appeal: (1) one of her convictions was not supported by substantial evidence; (2) the trial court abused its discretion when it refused to dismiss her prior strike conviction pursuant to Penal Code section 1385[1] and *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*); (3) her trial counsel was ineffective in failing to seek pretrial mental health diversion under section 1001.36; and (4) she is entitled to a remand for resentencing under newly enacted Senate Bill No. 567 (2021—2022 Reg. Sess.) (Senate Bill 567). We affirm.

## STATEMENT OF THE CASE

On November 19, 2018, the Kern County Superior Court filed an information charging Lopez with two counts of making criminal threats (§ 422). Count 1 was for victim J.L. and count 2 for victim J.M. It was alleged in both counts that Lopez had suffered a prior serious felony conviction within the meaning of the Three Strikes law (§§ 667, subds. (c)–(j), § 1170.12, subds. (a)–(e)), and had served a prior prison term (§ 667.5, subd. (b)). Lopez pleaded not guilty to the charges and denied all allegations on November 21, 2018.

On December 19, 2018, defense counsel raised a doubt as to Lopez's competency to stand trial under section 1368. The court suspended proceedings and appointed a licensed clinical psychologist, Dr. Michael Musacco, to examine Lopez. Dr. Musacco examined Lopez and found her to be malingering, but also offered the diagnoses of unspecified mood disorder, stimulant use disorder, and antisocial personality disorder. Dr. Musacco found Lopez competent to stand trial because of the malingering finding.

At a review hearing, defense counsel objected to Dr. Musacco's findings and moved for appointment of a second mental health professional to examine Lopez. The court granted the motion and appointed another licensed clinical psychologist, Dr. Carol Matthews, to examine Lopez. Dr. Matthews examined Lopez and provisionally

---

[1] Undesignated statutory references are to the Penal Code.

2.

diagnosed her with schizophrenia and found her incompetent to stand trial. The defense moved for a third mental health professional to be appointed, and the court granted the motion and appointed licensed clinical psychologist Dr. Kathe Lundgren to examine Lopez.

Dr. Lundgren examined Lopez and diagnosed her with "schizoaffective disorder, bipolar type, current depressed"; "amphetamine type substance use disorder, in institutional remission"; and post-traumatic stress disorder (PTSD). Dr. Lundgren recommended Lopez be found incompetent to stand trial, and the court found Lopez incompetent to stand trial at a hearing on February 28, 2019. Lopez was committed to the state hospital until her competency was restored, and proceedings were reinstated on August 23, 2019.

A jury trial started on October 16, 2019. The information was amended to include an allegation in both counts that Lopez had suffered a prior serious felony conviction within the meaning of section 667, subdivision (a). Lopez successfully moved for a bifurcated trial on the prior conviction allegations and waived her right to a jury trial on the prior conviction.

The jury returned guilty verdicts on both counts, and the court found true all of enhancement allegations in a bifurcated trial. On January 30, 2020, Lopez was sentenced to an aggregate term of seven years, four months. On count 1, the court imposed the upper term of three years, doubled to six years due to the prior strike offense. On count 2, the court imposed the midterm of eight months, doubled to one year, four months, to run consecutive to the term imposed on count 1. The court struck the section 667, subdivision (a), and 667.5, subdivision (b), enhancements.

**FACTS**

In October 2018,[2] J.L. was living with her boyfriend, J.M., and the couple's three-year-old son in an apartment in Taft. Lopez lived in the apartment next door. In the three or four months Lopez lived there, she made rude and threatening statements to J.L. and J.M. about "every other day." She called J.L. a "bitch" and a "cunt" and called J.L. and J.M. "fucking niggers."

Lopez's behavior caused J.L. and J.M. to fear her. They stopped taking their trash out and did not allow their son to play outside. On October 18, J.L. asked Lopez if she would move her (Lopez's) clothes on an outdoor clothesline in the common backyard. Lopez angrily yelled at J.L., and J.L. was afraid to go outside because J.M. was not there, so she called police. J.L. was pregnant at the time, which made her even more fearful. Police came but did not arrest Lopez.

On October 20, while J.L. was in the common backyard hanging her clothes on the clothesline, she asked Lopez if she (Lopez) could take down her clothes. Lopez became "really mad." J.M. heard yelling, went outside, and saw Lopez standing by her door. J.L. and J.M. again "nicely" asked Lopez to move her clothes, and an argument broke out. J.M. mentioned that he was the one who had originally erected the clothesline and that he could take it down. Lopez went into her apartment and came back out with a kitchen knife and cut the clothesline down. J.M. testified he could not tell what type of knife it was but stated it could have been a butter knife.

Lopez was "very angry" as she waved the knife around five feet away from J.L. and J.M., coming "pretty close" but not attacking them. While she waved the knife, Lopez threatened, "I'm going to get my homies on you guys. You guys messed up." Lopez specifically threatened J.M. that she would have "her homies take care of him." She also told J.M. her friends would either "beat [J.M.] up" or "fuck [him] up the ass."

_____

[2] References to dates are to dates in 2018 unless otherwise stated.

4.

J.M. took this to mean that Lopez "was going to have people maybe go do stuff to [him] in front of [his] family[.]" He testified these threats placed him in fear not only for his own safety, but for that of J.L. and his children. He also testified Lopez had more than once before threatened to have her friends come and assault him, but no one ever came to do so. However, he stated he always "believed" Lopez's threats.

Although Lopez did not specifically threaten to cut J.L. or J.M. with the knife during the October 20 incident, J.L. feared Lopez would, so J.L. and J.M. went inside and called 911. The same officer who responded on October 18 arrived. The officer testified J.L. and J.M. appeared frightened as they described what happened. The officer also spoke with Lopez, who said J.L. asked her to move her clothes and J.M. said he was going to take down the clothesline. Lopez said she told J.L. and J.M. she would cut the clothesline, went inside to get a knife, and cut down the clothesline. Lopez was cursing and yelling as she spoke to the officer. The officer asked Lopez if she waved the knife at her neighbors or threatened them, and Lopez evaded the question. Lopez went into a rant, referring to her neighbors "bitches and dirty niggers" and blaming them as the reason she was getting evicted. The officer placed Lopez under arrest, and Lopez continued to use foul language toward the officer, calling him a nigger several times.

J.L. and J.M. both testified they were still afraid of Lopez. J.L. also testified she was afraid of living in her own home because she feared Lopez would send her friends to her home, even after Lopez was arrested.

## DISCUSSION

### I.     Substantial evidence to support criminal threats conviction

Lopez claims her conviction in count 2 for making a criminal threat (§ 422) against J.M. was not supported by substantial evidence and must be reversed. She specifically argues J.M.'s fear was unreasonable under the circumstances. We disagree.

5.

## A. Standard of review

"[W]hen a conviction is challenged on appeal for insufficient evidence to support it, we apply the substantial evidence standard of review. [Citations.] In applying that substantial evidence standard, we review the whole record in the light most favorable to the judgment to determine whether there is substantial evidence to support the conviction. [Citations.] Substantial evidence is evidence that is reasonable, credible, and of solid value such that a rational trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Jacobo* (2019) 37 Cal.App.5th 32, 41—42.) The record must "reasonably justify the jury's findings" for us to uphold the verdict. (*People v. Ceja* (1993) 4 Cal.4th 1134, 1139.) "We draw all reasonable inferences in favor of the verdict, and presume the existence of every fact the jury could reasonably deduce from the evidence that supports its findings." (*People v. Franklin* (2016) 248 Cal.App.4th 938, 947.)

## B. Applicable law and analysis

Section 422 requires proof of the following elements to establish a criminal threat: (1) the defendant willfully threatened to commit a crime that would result in death or great bodily injury to another person; (2) the defendant made the threat with the specific intent that the statement be taken as a threat, even if he or she had no intent to actually carry it out; (3) the threat was, on its face and under the circumstances in which it was made, so unequivocal, unconditional, immediate, and specific as to convey to the person threatened a gravity of purpose and an immediate prospect of execution of the threat; (4) the threat actually caused the person threatened to be in sustained fear for his or her own safety or for his or her immediate family's safety; and (5) the threatened person's fear was reasonable under the circumstances. (§ 422; *People v. Toledo* (2001) 26 Cal.4th 221, 227—228 (*Toledo*).)

Lopez contests only the fifth element—whether J.M.'s fear was reasonable under the circumstances. (§ 422, subd. (a).) Lopez contends that because she had previously

6.

threatened J.M. that she would have her friends assault him but no one had ever come to do so, "the evidence adduced at trial did not establish that [J.M.]'s fear was reasonable under the circumstances." The People disagree, arguing that the evidence established not just that J.M.'s fear for his own safety was reasonable, but that his fear for his, J.L.'s, and his son's safety was reasonable as well.

We conclude the evidence was sufficient to support a finding J.M.'s fear for his safety and that of his immediate family was reasonable under the circumstances. Lopez had threatened J.M. and his family before, but this time Lopez was waving a knife at them and was very angry. Lopez threatened, with very vulgar language, to have her friends come and physically and sexually assault J.M. This was unprovoked outrageous conduct, and it was reasonable for J.M. to be in fear for his safety and that of his family. The couple had a small child and J.L. was pregnant at the time, and J.M. was not always at home to protect the family. In these circumstances, the evidence supported a jury finding that J.M.'s fear for himself and his vulnerable family was reasonable.

## II. Prior strike conviction

Lopez contends the trial court abused its discretion in denying her *Romero* motion. We disagree for the following reasons.

In the furtherance of justice, a trial court may strike or dismiss a prior conviction allegation. (§ 1385, subd. (a); *Romero, supra,* 13 Cal.4th at p. 504.) A court's ruling on a *Romero* motion is reviewed under the deferential abuse of discretion standard; that is, the defendant must show the sentencing decision was irrational or arbitrary. (*People v. Carmony* (2004) 33 Cal.4th 367, 375, 377 (*Carmony*).) It is not enough to show reasonable people might disagree about whether to strike a prior conviction. (*Id.* at p. 378.) The Three Strikes law "not only establishes a sentencing norm, it carefully circumscribes the trial court's power to depart from this norm .... [T]he law creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper." (*Ibid.*) Only extraordinary circumstances justify a finding that a

7.

career criminal is outside the Three Strikes law.  (*Ibid.*)  Therefore, "the circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme must be even more extraordinary."  (*Ibid.*)

When considering whether to strike prior conviction allegations, a court considers "whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies."  (*People v. Williams* (1998) 17 Cal.4th 148, 161 (*Williams*).)  The record before us reveals no basis for concluding, as a matter of law, Lopez falls outside the spirit of the Three Strikes law.

Lopez committed her prior strike offense—a violation of section 212.5, subdivision (a)—in December 2014, was convicted in May 2015, and received three years of felony probation.[3]  She violated probation in September 2015 and was ordered to serve three years in prison.  She paroled in December 2017 and was on parole when she committed the current offenses in October 2018.  The trial court stated during the motion hearing it was aware of Lopez's parolee status and of her nine prior stints on probation in which she performed unsatisfactorily.  The court stated:  "She was on felony and misdemeanor probation, it looks like during the course of her life, nine individual times where that was unsatisfactory, and when this crime was committed, she was on state parole."

The commission of the prior strike offense and the current offenses was separated by less than four years.  This fact, combined with the fact that Lopez had been out of prison for less than a year and was still on parole, makes it impossible to conclude the

---

[3] Section 212.5, subdivision (a) is robbery in the first degree.

trial court abused its discretion in finding Lopez did not fall outside of the spirit of the Three Strikes Law and accordingly denying her *Romero* motion.

Lopez contends the trial court "failed to properly consider [her] mental illness when ruling on the" *Romero* motion. This contention fails because it runs afoul of the presumption that "the trial court considered all of the relevant factors and properly applied the law" when making discretionary sentencing choices. (*People v. Brugman* (2021) 62 Cal.App.5th 608, 638.) The trial court heard Lopez's *Romero* motion and denied it before proceeding to sentence her. During the hearing on the *Romero* motion, Lopez's counsel spoke at length about Lopez's mental illness and referred to Dr. Lundgren's report prepared in connection with Lopez's mental competency proceedings. The trial court acknowledged it had received a copy of Dr. Lundgren's report and stated it "appreciate[d]" defense counsel's "input." Nothing in the record demonstrates the court did not properly consider Lopez's mental illness when ruling on the *Romero* motion. We find no abuse of discretion in denying the *Romero* motion.

## III. Mental health diversion

Lopez claims her counsel was ineffective in failing to seek pretrial mental health diversion under section 1001.36, and contends she is entitled to a remand for the trial court to consider her suitability for such diversion. We conclude as a threshold matter that the issue was forfeited for failure to raise it below, and also reject Lopez's contention because the record fails to demonstrate that counsel provided ineffective assistance.

Effective June 27, 2018, "the Legislature enacted sections 1001.35 and 1001.36 as part of Assembly Bill No. 1810 (2017—2018 Reg. Sess.) .... [Citation.] Section 1001.36 gives trial courts the discretion to grant pretrial diversion for individuals suffering from certain mental health disorders. (§ 1001.36, subd. (a).)" (*People v. Frahs* (2020) 9 Cal.5th 618, 626 (*Frahs*).) "The stated purpose of the diversion statute 'is to promote all of the following: [¶] (a) Increased diversion of individuals with mental disorders to mitigate the individuals' entry and reentry into the criminal justice system while

9.

protecting public safety. [¶] (b) Allowing local discretion and flexibility for counties in the development and implementation of diversion for individuals with mental disorders across a continuum of care settings. [¶] (c) Providing diversion that meets the unique mental health treatment and support needs of individuals with mental disorders.' (§ 1001.35, subds. (a)—(c).)" (*Frahs,* at p. 626.)

Section 1001.36 defines "pretrial diversion" as "the postponement of prosecution, either temporarily or permanently, at any point in the judicial process from the point at which the accused is charged until adjudication, to allow the defendant to undergo mental health treatment[.]" (§ 1001.36, subd. (c).) If a defendant is charged with a qualifying offense, a trial court may grant pretrial diversion if it finds all six of the following criteria are met: (a) the defendant suffers from a qualifying mental disorder;[4] (b) the mental disorder was a significant factor in the commission of the charged offense; (c) in the opinion of a qualified mental health expert, the defendant's symptoms will respond to mental health treatment; (d) the defendant consents to diversion and waives his or her right to a speedy trial; (e) the defendant agrees to comply with treatment as a condition of diversion; and (f) the defendant will not pose an unreasonable risk of danger to public safety if treated in the community. (§ 1001.36, subd. (b)(1)(A)—(F).)

If the six criteria in section 1001.36, subdivision (b)(1), are met, and if the trial court "is satisfied that the recommended inpatient or outpatient program of mental health treatment will meet the specialized mental health treatment needs of the defendant" (§ 1001.36, subd. (c)(1)(A)), the court may order diversion into an approved mental health treatment program for up to two years (§ 1001.36, subd. (c)(1) & (3)). If the

---

[4] Section 1001.36, subdivision (b)(1)(A), requires the court be "satisfied that the defendant suffers from a mental disorder as identified in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders, including, but not limited to, bipolar disorder, schizophrenia, schizoaffective disorder, or post-traumatic stress disorder, but excluding antisocial personality disorder, borderline personality disorder, and pedophilia."

10.

defendant commits an additional offense or otherwise performs unsatisfactorily in the diversion program, the court may reinstate the criminal proceedings.  (§ 1001.36, subd. (d).)  "If the defendant has performed satisfactorily in diversion, at the end of the period of diversion, the court shall dismiss the defendant's criminal charges that were the subject of the criminal proceedings at the time of the initial diversion," and "the arrest upon which the diversion was based shall be deemed never to have occurred[.]" (§ 1001.36, subd. (e).)

A defendant bears the burden of making a prima facie showing that he or she meets the minimum requirements of eligibility for diversion.  (§ 1001.36, subd. (b)(3).)  Even if a defendant otherwise satisfies the six eligibility requirements, the court must nonetheless be satisfied that the recommended mental health treatment program "will meet the specialized mental health treatment needs of the defendant."  (§ 1001.36, subd. (c)(1)(A).)  "Before approving a proposed treatment program, the court shall consider the request of the defense, the request of the prosecution, the needs of the defendant, and the interests of the community."  (§ 1001.36, subd. (c)(1)(B).)

To establish ineffective assistance, a defendant must show (1) counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and (2) the deficient performance prejudiced the defendant. (*Strickland v. Washington* (1984) 466 U.S. 668, 687—692; *People v. Ledesma* (1987) 43 Cal.3d 171, 216—218 (*Ledesma*).)

In measuring counsel's performance, judicial review is highly deferential.  (*In re Andrews* (2002) 28 Cal.4th 1234, 1253; *Ledesma, supra,* 43 Cal.3d at p. 216.)  "When examining an ineffective assistance claim, a reviewing court defers to counsel's reasonable tactical decisions, and there is a presumption counsel acted within the wide range of reasonable professional assistance.  It is particularly difficult to prevail on an *appellate* claim of ineffective assistance."  (*People v. Mai* (2013) 57 Cal.4th 986, 1009.)  When the strategic reasons for challenged decisions are not apparent from the record, we

11.

will not find ineffective assistance of counsel unless there could have been " ' "no conceivable tactical purpose" ' " for counsel's acts or omissions. (*People v. Earp* (1999) 20 Cal.4th 826, 896; see *People v. Arce* (2014) 226 Cal.App.4th 924, 930—931.)

The record does not demonstrate whether defense counsel was aware of section 1001.36, and we cannot presume that counsel was unaware of the statute. Lopez contends that, in any event, there is no satisfactory explanation for why counsel would fail to move for mental health diversion. To support this argument, Lopez argues there is evidence in the record supporting four of the six criteria in section 1001.36, subdivision (b)(1). We reject Lopez's contention.

We first observe that Dr. Lundgren diagnosed Lopez with at least two qualifying mental health conditions under section 1001.36, subd. (b)(1)(A)—schizoaffective disorder and PTSD. Additionally, Lopez's mental health issues certainly were well known to defense counsel, as counsel had declared a doubt as to her competency under section 1368. Nevertheless, defense counsel could have chosen not to request diversion for a variety of reasons. Specifically, counsel could have discussed the matter with Lopez, and she may have refused to consent to diversion and waive her speedy trial rights (§ 1001.36, subd. (b)(1)(D)) or refused to comply with mental health treatment (subd. (b)(1)(E)). Counsel may also have determined that there was insufficient evidence to support one or more of the requirements for mental health diversion. There also could be other reasons that reasonably led defense counsel to conclude that the trial court would have ruled that defendant was ineligible for mental health diversion. "Under those circumstances, a reviewing court has no basis on which to determine whether counsel had a legitimate reason for making a particular decision, or whether counsel's actions or failure to take certain actions were objectively unreasonable." (*People v. Mickel* (2016) 2 Cal.5th 181, 198.) Nor has Lopez shown "affirmative evidence that counsel could have had 'no rational tactical purpose' for these decisions." (*Id.* at p. 200.)

Lopez asserts evidence establishes four of the six criteria in section 1001.36, subdivision (b)(1), were satisfied. Specifically, she asserts she suffers from a qualifying mental illness (§ 1001.36, subd. (b)(1)(A)), her mental disorder was a significant factor in the commission of the crimes (subd. (b)(1)(B)), the symptoms of the mental disorder motivating her criminal behavior would respond to mental health treatment (subd. (b)(1)(C)), and that she does not pose an unreasonable risk of danger to public safety (subd. (b)(1)(F)). There was some evidence from Dr. Lundgren's report that she suffers from a qualifying mental health illness. However, the record does not support Lopez's arguments with respect to the other three specified criteria.

With respect to the section 1001.36, subdivision (b)(1)(B) criterion, she contends her mental illness was "undoubtedly a significant factor in the commission of the charged crimes" because her "extremely angry response" to J.L.'s request to move her laundry was "irrational." But this contention is not undoubted. While Lopez's mental illness could have played some role in her behavior that day toward J.L. and J.M., the record does not definitively establish that her illness was a "significant factor" in her criminal conduct.

The section 1001.36, subdivision (b)(1)(C) criterion requires that "the defendant's symptoms motivating the criminal behavior would respond to mental health treatment." Lopez, apparently misapprehending this criterion, only asserts that her "mental illness was a motivating factor behind her criminal behavior." Lopez does not assert, much less cite any evidence to prove, that her symptoms would respond to mental health treatment.

Finally, regarding the section 1001.36, subdivision (b)(1)(F) criterion, Lopez asserts she does not pose an unreasonable risk of danger to public safety. This criterion requires that "*the court* [be] satisfied that the defendant will not pose an unreasonable risk of danger to public safety[…] if treated in the community." (§ 1001.36, subd. (b)(1)(F), italics added.) At the sentencing hearing, the trial court found Lopez "ha[d] engaged in violent conduct which indicates a serious danger to society," and stated that she "clearly

13.

does not accept culpability for the instant offense" and therefore is "a danger to the community and a prison sentence is appropriate." It is therefore doubtful that, had Lopez requested mental health diversion, the trial court would have been satisfied Lopez would not have posed an unreasonable risk of danger to public safety if treated in the community.

A significant problem with Lopez's argument regarding the section 1001.36, subdivision (b)(1), criteria is that she only discusses four of the six criteria. Thus, even were we to agree with her that there was evidence regarding four criteria, there would still be two criteria left unsupported. Her discussion of less than all six criteria is a futile effort since all six must be satisfied to grant diversion.

In conclusion, because there are legitimate reasons why defense counsel may have chosen not to pursue a mental health diversion eligibility hearing on defendant's behalf, we cannot conclude defense counsel's performance was objectively unreasonable. Under these circumstances, an ineffective assistance claim is more appropriately decided in a habeas corpus proceeding. (*People v. Gray* (2005) 37 Cal.4th 168, 211 [rejecting claim of ineffective assistance of counsel because it "is more appropriately raised in a petition for a writ of habeas corpus"]; *People v. Jones* (2003) 29 Cal.4th 1229, 1263, habeas granted in *Jones v. Chappell* (C.D. Cal. 2014) 31 F.Supp.3d 1050 [issues requiring review of matters outside the record are better raised on habeas corpus rather than on direct appeal]; *People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266—267 [a claim of ineffective assistance of counsel relating to " ' "why counsel acted or failed to act in the manner challenged" ' " is more appropriately decided in a habeas corpus proceeding].)

## IV.    Senate Bill 567

In a supplemental brief, Lopez argues the matter must be remanded so the trial court may resentence her under newly enacted Senate Bill 567. We disagree.

While this appeal was pending, the Governor signed Senate Bill 567, which became effective January 1, 2022. That bill, among other things, generally limits the trial

court's ability to impose the upper term unless aggravating circumstances have been stipulated to by the defendant or found true beyond a reasonable doubt by a jury or by the court in a court trial. (§ 1170, subd. (b)(1), (2), added by Stats. 2021, ch. 731, § 1.3.) Evidence of the defendant's prior convictions, in the form of certified records of conviction, is an exception to this general rule and need not be submitted to a jury. (§ 1170, subd. (b)(3).) "These amendments apply retroactively to [Lopez] because h[er] conviction was not final when this legislation took effect." (*People v. Flores* (2022) 75 Cal.App.5th 495, 500.)

The trial court found no circumstances in mitigation at the sentencing hearing. As to circumstances in aggravation, the court stated:

> "Circumstances in aggravation are the defendant's prior convictions as an adult are numerous. The defendant's prior performance on seven grants of standard misdemeanor probation, one grant of misdemeanor probation, pursuant to [section] 1210.1, and one grant of felony probation was unsatisfactory, in that she failed to abide by the terms and/or reoffended.

> "The defendant was on state parole when the crime was committed.

> "The defendant was armed with a weapon at the time of the commission of the crime, to wit, a knife.

> "The defendant has engaged in violent conduct which indicates a serious danger to society, as evidenced by her conviction in the instant offense and prior convictions for violations of Penal Code Section[s] 245(a)(1), 243(e)(1), and 212.5(a)."

The court continued:

> "Defendant is considered an absolutely unsuitable candidate for a grant of felony probation. In the past the defendant has been granted opportunities on both felony and misdemeanor probation. However, she has failed to comply with terms and conditions and/or reoffended.

> "Additionally, the defendant's criminal convictions include numerous crimes of violence.

15.

"Furthermore, during the interview the defendant—apparently she reported one of the victims was the instigator and had a weapon. In that the defendant clearly does not accept culpability for the instant offense, she's a danger to the community and a prison sentence is appropriate.

"Taking into consideration the defendant's criminal record, current case circumstances, the fact that the defendant was armed with a weapon during the commission of the instant offense as well as taking into consideration the weight of the aggravating circumstances versus none in mitigation, the upper term in sentencing appears to be appropriate and will be ordered."

Lopez states she did not stipulate to any of the facts underlying any of the aggravating circumstances that the court articulated, nor did her jury find such facts true beyond a reasonable doubt. She therefore contends the upper term of three years is no longer valid under amended section 1170, subdivision (b), and her sentence must be vacated.

Lopez is correct there was no stipulation or jury finding relating to the facts underlying the aggravating circumstances. However, some of the aggravating circumstances the trial court relied on were duly established by certified records of conviction and Lopez's own admission—namely, that Lopez (1) was on parole when she committed the current offenses and (2) had suffered numerous prior convictions with a history of unsatisfactory performance on probation. As we will explain, we can affirm the imposition of the upper term if just one of the aggravating circumstances was duly proven. (*People v. Sandoval* (2007) 41 Cal.4th 825, 838—839 (*Sandoval*).)

As discussed, Lopez requested a bifurcated court trial on the enhancement allegations, all of which were based on the same prior conviction—a 2015 conviction for violation of section 212.5, subdivision (a), for which she served a prison term. The prosecution proved this prior conviction and resulting prison term with (1) a certified copy of her California Law Enforcement Communications System (CLETS) rap sheet and (2) a certified copy of a section 969b packet from the California Department of

16.

Corrections and Rehabilitation.[5]  As stated, evidence of a defendant's prior convictions, in the form of certified records of conviction, need not be submitted to a jury.  (§ 1170, subd. (b)(3).)  The rap sheet contained Lopez's adult criminal history and showed she was on parole when she was arrested for the current offenses.  Moreover, defense counsel admitted Lopez's parolee status during the *Romero* motion hearing.  Thus, multiple aggravating circumstances were duly established.

Other aggravating circumstances were not stipulated to or found true beyond a reasonable doubt, namely that Lopez was armed with a weapon (a knife) while committing the current offenses (Cal. Rules of Court, rule 4.421(a)(2))[6] and that she "has engaged in violent conduct that indicates a serious danger to society  (rule 4.421(b)(1)). However, any error in taking these circumstances into consideration is harmless. (*Sandoval, supra,* 41 Cal.4th at p. 838 ["denial of the right to a jury trial on aggravating circumstances is reviewed under the harmless [beyond a reasonable doubt] standard set forth in *Chapman v. California* (1967) 386 U.S. 18[…]"].)  "[I]f a reviewing court concludes, beyond a reasonable doubt, that the jury, applying the beyond-a-reasonable-doubt standard, unquestionably would have found true at least a single aggravating circumstance had it been submitted to the jury, the … [error is] harmless."  (*Sandoval, supra,* 41 Cal.4th at p. 839; see also *People v. Osband* (1996) 13 Cal.4th 622, 728 [single aggravating factor is sufficient to support an upper term].)  Here, we need not determine whether a jury would have found any aggravating circumstances true beyond a reasonable doubt because, as explained, multiple aggravating circumstances were duly proven.  A remand for resentencing is therefore not warranted in this case.

---

[5] A CLETS record is admissible to prove a prior conviction.  (See *People v. Martinez* (2000) 22 Cal.4th 106, 116; *People v. Dunlap* (1993) 18 Cal.App.4th 1468, 1471—1481.)

[6] References to rules are to the California Rules of Court.

## DISPOSITION

The judgment is affirmed.

                                                   SNAUFFER, J.

WE CONCUR:

DETJEN, ACTING P. J.

SMITH, J.