Filed 5/5/26  P. v. Laster CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>TOULUVYA DONESHA LASTER,<br><br>    Defendant and Appellant. | F088564<br><br>(Super. Ct. No. F23902839)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Gregory T. Fain, Judge.

Lindsey M. Ball, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Galen N. Farris and Henry J. Valle, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Penal Code section 1385 encourages the dismissal of sentencing enhancements when certain "mitigating circumstances" are shown to exist. (*Id.*, subd. (c)(2); all undesignated statutory references are to the Penal Code.) "Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety." (*Ibid.*) Absent a finding of danger to public safety, "the presence of an enumerated mitigating circumstance will generally result in the dismissal of an enhancement unless the sentencing court finds substantial, credible evidence of countervailing factors that 'may nonetheless neutralize even the great weight of the mitigating circumstance, such that dismissal of the enhancement is not in furtherance of justice.' " (*People v. Walker* (2024) 16 Cal.5th 1024, 1038 (*Walker*).)

Appellant, Touluvya Donesha Laster (defendant), was sentenced to eight years in prison for committing a violent felony. The trial court imposed the middle term of four years for the crime, plus a three-year enhancement for personal infliction of great bodily injury (GBI) and a one-year enhancement for personal use of a deadly weapon. By law, the existence of multiple enhancements was a mitigating circumstance weighing greatly in favor of dismissing "all enhancements beyond a single enhancement." (§ 1385, subd. (c)(2)(B).) The record on appeal indicates this sentencing factor was overlooked by defense counsel, the prosecutor, and the court.

Defendant alleges constitutionally deficient performance by her trial attorney. Although such claims are disfavored on direct appeal, this one has merit. Defense counsel did not request the dismissal of any enhancements, nor did counsel object when both the probation department and the prosecutor erroneously claimed there were no mitigating circumstances. The trial court found there were some circumstances in mitigation, and listed them, but its findings did not include the fact of multiple enhancements. There was no discussion of section 1385, no findings of danger to public safety, and no apparent consideration of whether any enhancements should be dismissed.

2.

There is no conceivable rational, tactical explanation for defense counsel's failure to argue the applicability of section 1385, subdivision (c)(2)(B). But for counsel's deficient performance, it is reasonably probable defendant would have obtained a better result at sentencing. Defendant is thus entitled to a new sentencing hearing.

## FACTUAL AND PROCEDURAL BACKGROUND

The underlying incident occurred in November 2020. Initial charges were dismissed and refiled in April 2023. The operative amended information was filed in May 2024, shortly before trial. These dates are relevant in light of Senate Bill No. 81 (2021–2022 Reg. Sess.), which added the "mitigating circumstances" provision to section 1385 effective January 1, 2022. (Stats. 2021, ch. 721, § 1.) In other words, the relevant sentencing law had been in place for over two years at the time of trial.

Defendant was prosecuted for inflicting "unjustifiable physical pain or mental suffering" upon a minor in violation of section 273a, subdivision (a) (count 1). The victim was 17 years old at the time of the offense. Defendant was also charged with committing assault with a deadly weapon (§ 245, subd. (a)(1); count 2). Both counts included GBI enhancement allegations (§ 12022.7, subd. (a)). Count 1 further alleged the use of a deadly weapon for purposes of section 12022, subdivision (b)(1).

The People sought upper term sentencing by pleading aggravating circumstances in the language of rule 4.421(a)(1) and (b)(2) of the California Rules of Court. (See § 1170, subd. (b)(2).) Those allegations were submitted for the trial court's determination in a bifurcated proceeding. The substantive charges and enhancement allegations were tried before a jury.

**Jury Trial**

General Background

Defendant was 27 years old at the time of the incident. She lived on the ground floor of a multiunit apartment complex with her two young children. Defendant's upstairs neighbor, M.T., is an adult woman whose age is not provided in the record.

3.

M.T.'s 17-year-old nephew, N.M., lived with her on a part-time basis. We will refer to N.M. and M.T. as "the victim" and "the victim's aunt."

Three additional residents of the apartment complex testified as prosecution witnesses. H.M. lived in a ground-floor apartment located directly across from defendant's front door. K.M. also lived on the ground floor. C.R. lived in a second-floor apartment next door to the victim's aunt.

Defendant's female cousin, A.P., was involved in the underlying events but did not testify at trial. In defendant's trial testimony, she described A.P. as being "[s]ubstantially younger" than she. It is unclear whether A.P. was an adult or a minor at the time of the incident.

Prosecution Case

On November 14, 2020, defendant and her cousin were outside of defendant's apartment when the victim's aunt began sweeping her upstairs patio. The sweeping caused dust and debris to fall around and upon defendant, and a heated argument ensued. The verbal exchange ended with defendant issuing a threat. According to the victim's aunt, defendant told her, "Watch when you come down those stairs" and also said she was going to "beat [her] ass." Witness C.R. recalled hearing defendant say, "Don't let me catch you outside, downstairs." The victim similarly testified to hearing defendant tell his aunt "that she was going to catch her later."

Several hours later, the victim's aunt exchanged glances with defendant's cousin while walking past defendant's apartment. The victim's aunt described the cousin's facial expressions as unfriendly, and she further testified that the cousin "started yelling for [defendant]." Defendant came out of the apartment and tackled the victim's aunt to the ground. Several neighbors testified to exiting their apartments and seeing defendant on top of the victim's aunt.

The victim heard the commotion, ran downstairs, and "threw" defendant off of his aunt.[1] Defendant's cousin intervened and began fighting with the victim. Defendant joined in the altercation between the victim and her cousin, with the trio moving away from the apartments and into a nearby "alley" filled with parked cars. The victim admitted to slapping the women and "swinging them against the cars," i.e., throwing defendant and her cousin against the vehicles.

Defendant and her cousin retreated to defendant's apartment and went inside the residence. The victim testified to following them and challenging defendant to come back outside: "I was telling her to come fight me still." The victim also kicked defendant's outdoor grill, causing lit charcoal briquettes to spill onto the ground.

After kicking the grill, the victim walked over to H.M.'s residence and began conversing with H.M. and K.M. Next, according to the victim, defendant exited her apartment and attacked him. The victim thought defendant was merely "throwing punches" before he realized that she had stabbed him. H.M. and K.M. also testified about the stabbing, and there were notable discrepancies in the accounts of all three witnesses. However, their testimony was consistent in terms of indicating that defendant stabbed the victim out of anger rather than in self-defense.

The victim was hospitalized with stab wounds to his liver and right lung. He spent time in the intensive care unit but eventually recovered from the injuries. Although the

[1] The Attorney General misreads the trial transcript as indicating defendant had a boyfriend who "tried to stop [the victim] at the bottom of the stairs." The victim testified it was *his aunt's* "boyfriend" who "stop[ped] [him] at the end of the stairs." The victim further testified, "So I like push him out the way, and I run up to my aunt, and I pull … defendant off her." As explained in other testimony, the victim and his aunt had spent the day at a lake with family members and an unnamed man. The victim's aunt referred to the man as "a friend I was seeing at the time." The victim twice referred to him as "her boyfriend at the time." The victim's aunt testified that she and her male companion were on their way to get food when the fight started: "[W]e had ordered food. We were going to pick up, and I dropped my nephew and my two kids off to shower and get ready for dinner." "I went by the staircase just to make sure they got in okay."

victim testified to staying in the hospital for over a month, his medical records showed that he was discharged after four days.

Defense Case

The defense case included evidence of an attempt by the victim's aunt to influence the trial testimony of witness H.M. Defense counsel also focused on the victim's admitted consumption of alcohol and marijuana prior to the physical altercation with defendant and her cousin. Defendant testified on her own behalf in support of a self-defense argument.

Defendant admitted to threatening the victim's aunt on the morning of the incident. While arguing with her about the patio debris, the victim's aunt had allegedly made an offensive remark about defendant's children, calling them " 'dirty ass kids.' " Defendant felt "triggered" by the insult and told her, " 'You won't come down here and say that.' [¶] 'If I see you downstairs, we're going to have a problem.' "

Several hours later, "probably a little bit before 6:00 [p.m.] or so," defendant lit a fire in her outdoor grill. After she had gone back inside to prepare the meat, her cousin told her the victim's aunt was outside of the apartment asking for her. In short, defendant acknowledged fighting with the victim's aunt but essentially claimed it was mutual combat.

Defendant's account of the victim's involvement portrayed him as having unnecessarily escalated the situation. She claimed her fight with his aunt had basically ended when the victim began "yanking" her clothes and pulling her hair. Defendant's cousin stepped in to protect her, and the victim began throwing punches. The fight between the victim and defendant's cousin moved into the alley, and defendant "started to intervene" when she saw her cousin getting "slammed" into a car. As the brawl continued, the victim landed more blows and threw both women into poles and vehicles.

Realizing the victim was "winning" the fight, defendant "proceeded to grab [her] cousin and [said], 'Let's go.' " They ran back to defendant's apartment, and the victim

6.

chased after them. He yelled, " 'Why are you bitches running now? I thought you all wanted to fight.' " As defendant and her cousin were entering the apartment, the victim allegedly picked up defendant's grill and threw it at them. While defendant was on the witness stand, her attorney displayed photographs showing burn marks on the wall outside of her apartment.

Despite having safely retreated to the interior of the apartment, defendant filled an empty liquor bottle with water to extinguish the burning charcoal outside of her door. Because the victim was still "ranting and raving," defendant armed herself with a knife before exiting the apartment. In this version of events, defendant announced, " 'I'm coming back out.' … 'I have a knife.' … 'If you do anything when I come out, I am going to stab you.' " She then stepped outside and began pouring water on the briquettes. The victim came "charging" at her, and she stabbed him in self-defense.

Defendant's credibility was impeached by the rebuttal testimony of a police officer who responded to an emergency dispatch about the stabbing. When he contacted defendant at the scene, she immediately said, " 'I didn't stab him.' " The officer further testified that defendant "was very, very angry, and every time [he] would try to ask her something, she would yell over [him]."

<u>Verdicts</u>

Defendant was convicted as charged, and all enhancement allegations were found true.

**Bench Trial**

During motions in limine for the jury trial, defense counsel requested bifurcation of the aggravating circumstances allegations. The trial court explained to defendant that if convicted, she would need to decide whether she wanted a jury trial or a bench trial on those allegations. The court added, "I'll tell you, the way the current law is, even with aggravating factors, it's been very hard for the court to go past mid-terms on these type of cases … because the law is so darn strict, even with aggravating factors."

7.

Following the close of evidence on the substantive charges, the trial court reminded the defense about the potential need to decide how the alleged factors in aggravation would be determined. The court also candidly advised the parties as follows: "[I]t would be very, very unlikely that I would go to any type of—if there was a conviction, any type of aggravated term on this case. You know, maybe that sounds a little presumptive. But if there was a conviction, I don't ever see me going to an aggravated term."

Following closing arguments and while the jury was deliberating, defendant requested a court trial on the aggravating circumstances. After finding she had made a knowing and intelligent waiver, the trial court stated, "I've already indicated with the parties, I think in this case, it's very unlikely [the alleged factors in aggravation] are going to make any difference at all at sentencing if there is a guilty verdict."

In the subsequent bench trial, the trial court found defendant's crimes met the criteria of rule 4.421(a)(1) of the California Rules of Court (all further rule references are to these rules). The court stated, "I think any of those factors could result in a true finding of this, and the Court does—definitely the crime[s] involved great violence, and there was an element of callousness to [them] as well." The finding was based in part on evidence that defendant had laughed after stabbing the victim and said, " 'I hope you die.' " In addition, multiple witnesses had testified to defendant's utterances of what the court described as "homophobic insults" throughout the incident.

The trial court also found defendant's prior adult convictions and sustained petitions in juvenile delinquency proceedings were "of increasing seriousness." (Rule 4.421(b)(2).) Defendant's adult convictions were for misdemeanor burglary and misdemeanor battery. Both convictions apparently arose from a single incident involving theft from a retail establishment, i.e., shoplifting. The court impliedly took judicial notice of defendant's juvenile record, which reportedly consisted of misdemeanor adjudications

for fighting on school property, vandalism, giving false information to police, and failure to obey probation conditions.

Despite its findings, the trial court again stated that it did not anticipate the aggravating circumstances would be "a determinative factor at the time of sentencing."

**Sentencing**

Defendant refused to waive her right to sentencing within 20 judicial days of the verdicts. (§ 1191.) On the originally scheduled sentencing date, the trial court identified numerous errors in the probation report. The court also noted that defendant had not been interviewed by the probation officer. Although the People wanted to proceed with sentencing, the defense requested and received a continuance to obtain an updated report. The initial report is not included in the record on appeal, but the court's statements clearly indicate the original recommendation was for middle term sentencing on both counts.

Defendant was eventually interviewed by the probation officer prior to sentencing. She apparently made a poor impression. In the amended report, the officer noted her "outright denials of wrongdoing" and "lack of remorse." The new recommendation was for upper term sentencing on both counts. In other words, the maximum prison sentence of 10 years for count 1 (six years for the crime plus three years for the GBI enhancement and one year for the weapon enhancement), and a stayed sentence of seven years for count 2 (four years for the crime plus three years for the GBI enhancement, stayed pursuant to section 654).

The amended probation report also noted defendant's self-alleged prior diagnosis of "PTSD (Post Traumatic Stress Disorder) and extreme anxiety at age 11," and additional mental health issues as a teenager. As indicated in the report and explained by defendant at sentencing, her father was murdered in front of her when she was nine years old. The probation officer did not, however, view defendant's childhood trauma as a mitigating circumstance. An analysis section of the report included, under the heading "RULE 4.423: CIRCUMSTANCES IN MITIGATION," the following statement: "This

9.

officer finds no factors in mitigation relating to the crime or to the defendant." (Bolding and underscoring omitted.)

The probation officer either ignored or overlooked rule 4.423(b)(11), under which multiple enhancements in a single case expressly constitute a factor in mitigation relating to the defendant. This error was not mentioned at the sentencing hearing. The prosecutor argued, "I see no mitigating factors here whatsoever," and later reiterated, "I do not find any mitigating circumstances here." Accordingly, the prosecutor asked the trial court to impose the longest possible aggregate prison term.

The trial court stated that it had "read and considered the Report and Recommendation of Probation, the new report," in its entirety. But whereas the court had previously made a detailed record of all errors it found in the original report, it did not identify any errors in the amended report. Defendant's trial counsel also failed to identify the report's erroneous analysis under rule 4.423. The court asked the defense attorney if he had "any additions or corrections" to the report, and he replied, "None, Your Honor."

Defense counsel made only a general request for leniency by asking the trial court not to impose the maximum punishment. We reproduce here counsel's entire argument at sentencing, with inclusion of the court's intermittent statements.

> "[Counsel]: Your Honor, my only remarks would be that I understand the Court heard all of the testimony. I understand and acknowledge the Court had the opportunity and watched and heard the evidence as a fact finder. I know this Court understood that [if the jury returned a guilty verdict], this Court would hear the factors in aggravation. We had discussed them. And at that point, the Court had indicated that, you know, the Court was observing the witnesses and hearing the evidence at least in my view at that point to understand the entire situation.
>
> "The Court: Yes.
>
> "[Counsel]: I'm not going to recount all the evidence for the Court. I understand it was an emotional and impactful presentation of the evidence. And the reason I mentioned it, Your Honor, is because, the Court's observance, the Court also knows in support of some of the

10.

statements made about the tensions that existed before, I'm not using that as an excuse, Your Honor. I'm saying that in context, the response at that time was something that everyone has spoken about, a mother's desire to protect her children in the face of what is perceived as very real and present danger. And this is from an individual who has, I would submit, markedly minor criminal history.[2]

"The Court: Okay.

"[Counsel]: And who notwithstanding that experience and the diagnosis we heard about in the probation report, she's obtained a high school graduate diploma. She's enrolled and participating at the—she has a Santa Monica College Associates Degree, and she is a certified California hemodialysis technician. She's done all those things, Your Honor, at a relatively young age given the situation where she was homeless and a single mom of two.[3]

"So under those circumstances, Your Honor, I ask the Court not to act with vengeance—

"The Court: No.

"[Counsel]: —and impose maximum punishment. What I ask the Court to do is exercise the powers it has and the discretion that it has to impose some type of sanction that the Court believes will provide some punishment but also mitigate mercy with that punishment. [*Sic*.] Thank you, Your Honor."

Before the pronouncement of judgment, the trial court spoke at length about the statutory presumption in favor of lower term sentencing in cases where a defendant's childhood trauma "was a contributing factor in the commission of the offense." (§ 1170,

---

**2**    Counsel's statement about "a mother's desire to protect her children" was a parroting of remarks made by individuals who spoke on defendant's behalf at sentencing but did not witness the incident. The notion that defendant stabbed the victim out of concern for her children's safety was unsupported by the trial evidence, including defendant's own testimony.

**3**    There is no evidence in the record or any mention in the probation report about defendant ever being homeless. This is noted here to underscore defense counsel's reliance on arguments for which no evidence had been presented, rather than the obvious and indisputable mitigating circumstance of multiple enhancements.

subd. (b)(6)(A).) The court acknowledged defendant's traumatic background but expressly found it was not a contributing factor in her commission of the offenses. The court also stated that even if such a connection could or should be found, lower term sentencing "would be contrary to the interests of justice because the aggravating factors outweigh the mitigating factors."

Next, the trial court exclusively focused on the propriety of imposing the middle or upper terms for counts 1 and 2. In another relatively long discussion, the court attempted to strike a balance between the seriousness of the crimes ("This was a truly vicious attack"), justice for the victim and his family, and the impact of a substantial prison sentence on defendant and her family. Without directly saying so, the court gave consideration to the amount of time defendant's children would be without their mother during a critical formative period. Her children were six and 11 years old at the time, and the eldest child spoke on defendant's behalf earlier in the hearing.

In referencing the two aggravating circumstances, the trial court stated that its finding on the rule 4.421(b)(2) allegation (increasing seriousness of prior convictions and adjudications) was a "close call." The court then made additional findings of nonstatutory circumstances in mitigation (see rule 4.423(c)):

> "In regard to mitigation to … defendant, she definitely has had a rough time growing up. The factors on page 2 [of the probation report] are significant. She had a lot of bad things in her childhood. I take that into account. I also think that she has, as a—you know, she tried to better herself as a high school graduate, has an AA degree or Associates Degree at college, and she did get a technical certificate to be [a] hemodialysis technician. So I considered that as a circumstance in mitigation."

The trial court ultimately declined to follow the probation department's sentencing recommendations. As to count 1, it imposed an aggregate prison term of eight years based on the middle term for the offense and consecutive terms for the two enhancements. As to count 2, it imposed and stayed (§ 654) an aggregate prison term

of six years based on the middle term for the offense and a consecutive term for the single enhancement.  Defendant filed a timely notice of appeal.

## DISCUSSION

A defendant forfeits the right to challenge discretionary sentencing decisions on appeal by not making pertinent objections and arguments in the trial court.  (See *People v. Scott* (1994) 9 Cal.4th 331, 352–354.)  This rule applies to claims based on the provisions of section 1385 regarding sentencing enhancements.  (*People v. Coleman* (2024) 98 Cal.App.5th 709, 724.)  Defendant acknowledges her forfeiture problem and asserts only a claim of ineffective assistance of counsel (IAC).

**Legal Overview**

<u>IAC</u>

"To establish ineffective assistance of counsel, a defendant must show that (1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficient performance was prejudicial .…"  (*People v. Scott* (1997) 15 Cal.4th 1188, 1211; accord, *Strickland v. Washington* (1984) 466 U.S. 668, 687–688, 691–692 (*Strickland*).)  Reviewing courts " 'must indulge a "strong presumption" that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight.' " (*In re Scott* (2003) 29 Cal.4th 783, 811–812.)  "Because the presumption of counsel's competence can typically be rebutted only with evidence outside the record, ineffective assistance claims are normally raised in habeas corpus proceedings where such evidence can be presented." (*People v. Arce* (2014) 226 Cal.App.4th 924, 930.)

Defendants who present IAC claims on direct appeal bear a "heavy burden." (*People v. Garcia* (2022) 76 Cal.App.5th 887, 900.)  "If the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged," the claim "must be rejected unless counsel was asked for an explanation and failed to provide one, or there

simply could be no satisfactory explanation." (*People v. Carter* (2005) 36 Cal.4th 1114, 1189.) Put differently, "where counsel's trial tactics or strategic reasons for challenged decisions do not appear on the record, we will not find ineffective assistance of counsel on appeal unless there could be no conceivable reason for counsel's acts or omissions." (*People v. Weaver* (2001) 26 Cal.4th 876, 926.)

<u>Applicable Sentencing Laws</u>

A violation of section 273a, subdivision (a), commonly known as the crime of child abuse, is punishable by a prison term of two, four, or six years. Felonious assault with a deadly weapon is punishable by a prison term of two, three, or four years. (§ 245, subd. (a)(1).) There is no triad for a GBI enhancement under section 12022.7, subdivision (a), or a weapon enhancement under section 12022, subdivision (b)(1). Those enhancements expose the offender to additional consecutive prison terms of three years and one year, respectively.

When an enhancement is pleaded and proven, the sentencing court is ordinarily presented with a binary choice: impose the additional punishment or strike/dismiss the enhancement. (*People v. Lopez* (2004) 119 Cal.App.4th 355, 364.) Section 1385, subdivision (c) provides, in pertinent part:

> "(1) Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute.

> "(2) In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety. 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others. [¶] … [¶]

"(B) Multiple enhancements are alleged in a single case. In this instance, all enhancements beyond a single enhancement shall be dismissed."

As previously discussed, the quoted provisions were added to section 1385 effective January 1, 2022. (Stats. 2021, ch. 721, § 1.) In March 2022, rule 4.423 was amended to conform to the Legislature's expanded definition of mitigating circumstances. The language of section 1385's multiple enhancement provision ("Multiple enhancements are alleged in a single case") is used verbatim in rule 4.423(b)(11).

At the time of defendant's sentencing there was a split of authority on the meaning of certain language in section 1385, subdivision (c)(2), and the issue was pending before the California Supreme Court. Two weeks later, the high court issued its decision in *Walker*, *supra*, 16 Cal.5th 1024. The *Walker* opinion rejected the view of some appellate courts that the Legislature had created "a rebuttable presumption in favor of dismissal that can only be overcome by a finding that dismissal endangers public safety." (*Id*. at p. 1033.)

We have already summarized the holding of *Walker* in the opening paragraph of this opinion. "Stated simply, if the [sentencing] court does not conclude that dismissal would endanger public safety, then mitigating circumstances strongly favor dismissing the enhancement.… This means that, absent a danger to public safety, the presence of an enumerated mitigating circumstance will generally result in the dismissal of an enhancement unless the sentencing court finds substantial, credible evidence of countervailing factors that 'may nonetheless neutralize even the great weight of the mitigating circumstance, such that dismissal of the enhancement is not in furtherance of justice.' " (*Walker*, *supra*, 16 Cal.5th at p. 1036.)

**IAC Analysis**

Deficient Performance

In a criminal case, the prosecution and the defense "have ample opportunity to influence the court's sentencing choices .…  As a practical matter, both sides often know before the hearing what sentence is likely to be imposed and the reasons therefor." (*People v. Scott*, *supra*, 9 Cal.4th at p. 350.)  "In anticipation of the hearing, the defense may file, among other things, a statement in mitigation urging specific sentencing choices and challenging the information and recommendations contained in the probation report. [Citations.]  Relevant argument and evidence also may be presented at sentencing."  (*Id.* at p. 351.)  "[A] defense attorney who fails to adequately understand the available sentencing alternatives, *promote their proper application*, or *pursue the most advantageous disposition for his client* may be found incompetent."  (*Ibid*., italics added.)

Defendant's trial counsel did not file any sentencing memoranda.  Assuming counsel was aware of the relevant sentencing laws concerning multiple enhancements, counsel nevertheless failed to "promote their proper application" and "pursue the most advantageous disposition for his client."  (*People v. Scott*, *supra*, 9 Cal.4th at p. 351.)  Counsel also failed to object to the erroneous contention in the probation report, and in the prosecutor's argument at sentencing, that there were no mitigating circumstances. Defendant contends there is no conceivable strategic or tactical explanation for counsel's omissions.

When a stay of punishment is required under section 654, a trial court has discretion to choose which count will serve as the principal term "without regard to the longest potential term of imprisonment."  (*People v. Caparaz* (2022) 80 Cal.App.5th 669, 688, citing § 654, subd. (a), as amended by Assembly Bill No. 518 (2021–2022 Reg. Sess.).)  Here, the court stated its intention to use count 1 as the principal term before defense counsel presented his arguments at the sentencing hearing.  The attorney was thus aware defendant's prison term would be based on the offense that included two

enhancement findings. We are unable to conceive of a rational, tactical reason for counsel's failure to request the dismissal of at least one enhancement pursuant to section 1385, subdivision (c)(2)(B).

The People argue defense counsel likely "made the tactical decision to focus on [defendant's] childhood trauma and its subsequent impact [on her] life to mitigate the principal base term rather than the dismissal of enhancements." The People further contend "counsel may have decided that based on the severity of the case, focusing on [defendant's] prior trauma would have been more effective than focusing on the current crime." There are several problems with these arguments.

The attorney did *not* focus on defendant's childhood trauma. He only alluded to it in a passing reference to "the diagnosis we heard about in the probation report." Moreover, and contrary to the People's stated rationale, counsel devoted a significant portion of his argument to the circumstances of the current offenses. Part of the defense strategy in the jury trial was to cast blame upon the victim and his aunt, which is essentially what counsel did in the first part of his argument at sentencing. Counsel's remaining arguments focused on defendant's status as a single mother and her educational/vocational achievements.

Furthermore, the attorney did not present a meaningful argument for lower term sentencing under section 1170, subdivision (b)(6). "As made plain by the statutory text, the mere fact a defendant … has suffered past trauma is insufficient—[such trauma] must be 'a contributing factor in the commission of the offense' for the low term presumption to apply." (*People v. Knowles* (2024) 105 Cal.App.5th 757, 765.) Childhood trauma can also qualify as a mitigating circumstance under section 1385, subdivision (c)(2)(E), and rule 4.423(b)(4), but those provisions likewise require a connection between the past trauma and the current offense. Counsel made no attempt to demonstrate the necessary relationship.

In the context of appellate representation, "where appellate counsel fails to raise 'a significant and obvious issue[,]' the failure will generally be considered deficient performance under *Strickland*, *supra*, 466 U.S. 668 if the missed issue is 'clearly stronger than those presented.'" (*In re Hampton* (2020) 48 Cal.App.5th 463, 477.) Similar reasoning can be applied to the performance of defendant's trial counsel at sentencing. Advocating for dismissal of an enhancement under section 1385, subdivision (c)(2)(B) would have been an objectively stronger argument, by a wide margin, than the generalized request for leniency based on defendant's educational achievements. And while childhood trauma can be considered as a factor in mitigation under the catchall provision of rule 4.423(c), it is not entitled to the same "great weight" as the existence of multiple enhancements. In any event, there is no rational explanation for counsel's failure to seek relief under section 1385 in addition to the arguments he presented at sentencing.

It is theoretically possible counsel (1) was aware of the applicable law, (2) believed everyone else including the judge had overlooked the applicable law, and (3) deliberately withheld the issue out of concern the judge would split the difference between the 10-year maximum sentence and the eight-year middle term sentence (inclusive of both enhancements) by imposing the upper term of six years on count 1, plus the GBI enhancement, and dismissing the weapon enhancement. That would have resulted in a nine-year term instead of the eight-year term defendant ultimately received. But even this theory falls apart when two key facts are considered.

First, the trial court informed the parties on four separate occasions of its strong disinclination to impose upper term sentencing. Second, and more importantly, defense counsel remained silent even after the court announced that the middle term would be imposed on both counts. Objections can be made during and even after the formal pronouncement of judgment. (See *People v. Gonzalez* (2003) 31 Cal.4th 745, 755; *People v. Steele* (2000) 83 Cal.App.4th 212, 226 [finding forfeiture where defendant "did

not object either before or after pronouncement of sentence, despite the opportunity to do so"].) Once it became clear the court was imposing the middle term, defense counsel had nothing to lose by pointing out the applicability of section 1385, subdivision (c)(2)(B). At the very least, doing so would have preserved the issue for appellate review. Failure to present any objections or argument regarding section 1385 fell below the minimum standards of performance required of a defense attorney.

<u>Prejudice</u>

Prejudice is established by showing "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Strickland*, *supra*, 466 U.S. at p. 694.) The burden requires more than "speculation as to the effect of the errors or omissions of counsel." (*People v. Williams* (1988) 44 Cal.3d 883, 937.) "A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland*, at p. 694.)

In this case, the question of prejudice necessarily requires consideration of whether the trial court was mindful of section 1385 and rule 4.423(b)(11). If there is no reason to believe the court overlooked the multiple enhancement provisions, a finding of prejudice cannot be made. "In the absence of evidence to the contrary, we presume that the court 'knows and applies the correct statutory and case law.'" (*People v. Thomas* (2011) 52 Cal.4th 336, 361.)

As discussed, the probation department initially filed a report that was rejected due to numerous errors. We do not have the original report. However, as documented across five pages of the reporter's transcript, the trial court made a detailed record of the errors and gave instructions to correct them. An amended report was filed. The amended report cited rule 4.423 but erroneously stated there were "no factors in mitigation relating to the crime or to … defendant." The court read the entire amended report but did not identify any errors in it. Why not? The most likely explanation is the erroneous rule 4.423 analysis went unnoticed.

The prosecutor twice argued there were no mitigating circumstances, and nobody pointed out that multiple enhancements constitute a mitigating circumstance under both section 1385 and rule 4.423. The trial court later made express findings of factors in mitigation, all of which were nonstatutory and, with possible exception of defendant's childhood trauma, objectively weak in comparison to the existence of multiple enhancements. Only the latter "weigh[ed] greatly in favor of dismissing [an] enhancement." (§ 1385, subd. (c)(2).) The court's omission of that circumstance from its list of mitigating factors again suggests that section 1385 was overlooked.

There was no discussion of danger to public safety or even the possibility of dismissing an enhancement. Those omissions have added significance given the state of the law at the time. The California Supreme Court had not yet decided whether the dismissal of enhancements was mandatory under the enumerated provisions of section 1385 in the absence of a public safety finding. (See *Walker*, *supra*, 16 Cal.5th at pp. 1029–1030.) The *Walker* case had already been argued, and the high court's opinion was imminently forthcoming. It is difficult to imagine the trial court making a conscious decision not to mention *Walker* or the issue of multiple enhancements, and choosing instead to perform a silent analysis under section 1385 without any input from the parties. A silent analysis would have been especially unusual given the court's extensive explanatory comments about its other sentencing choices.

The People oddly contend the trial court believed it was imposing "the longest term available to it." In making their argument, the People selectively quote certain statements by the court without acknowledging the context in which they were made. The court merely explained it was selecting as the principal offense the count with the "greater possible term." All such statements clearly pertained to section 654 and the court's discretionary authority to select either count as the principal offense. Prior to 2022, whenever section 654 was applicable, "the sentencing court was required to impose

the sentence that 'provides for the longest potential term of imprisonment' and stay execution of the other term." (*People v. Mani* (2022) 74 Cal.App.5th 343, 379.)

If the trial court had imposed the same sentence but dismissed the weapon enhancement, the prison term on count 1 would still have been longer than the term imposed for count 2. The court also could have easily imposed the upper term on both counts, but it made a discretionary decision to impose the middle term. As such, the People's response to defendant's prejudice argument is not persuasive.

For the reasons discussed, there is a strong probability the trial court overlooked section 1385, subdivision (c)(2)(B). Therefore, it is reasonably probable the outcome of the sentencing hearing would have been different but for defense counsel's failure to request the dismissal of an enhancement attached to count 1. This conclusion is further supported by the court's earlier statements regarding the unlikelihood that true findings on the allegations of aggravating circumstances would be "a determinative factor at the time of sentencing."

In summary, defendant has met the high burden of showing deficient performance by trial counsel and resulting prejudice. The appropriate remedy is a new sentencing hearing. No part of this opinion should be interpreted as impliedly expressing any views on how the trial court should exercise its sentencing discretion on remand.

**<u>DISPOSITION</u>**

The judgment is affirmed as to all verdicts and findings made in both stages of trial, but the sentence is vacated and the cause is remanded for a new sentencing hearing. Upon resentencing, the clerk of the superior court shall prepare an amended abstract of judgment and provide a certified copy to the Department of Corrections and Rehabilitation. The clerk of this court is directed to send a copy of this decision to the State Bar of California and to the attorney who represented defendant at trial. (Bus. & Prof. Code, § 6086.7, subds. (a)(2) & (b).)

PEÑA, J.

WE CONCUR:

HILL, P. J.

DETJEN, J.